84 CENTURY LIMITED PARTNERSHIP *v.* BOARD OF
TAX REVIEW OF THE TOWN OF ROCKY HILL
(13209)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

*(One justice dissenting)*

Argued February 9—decision released April 26, 1988

*Wesley W. Horton,* with whom were *Susan M. Cormier* and *Daniel H. Kennedy, Jr.,* for the appellant (defendant).

*I. Milton Widem,* with whom was *Emily N. Roisman,* for the appellee (plaintiff).

*George C. Hastings* and *Lori R. Wilson* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

HULL, J. The sole issue on this appeal is whether a municipal assessor has the power, under General Statutes § 12-55,[1] to increase a real property assessment between decennial revaluations on the ground that a sale of the property in question demonstrates that the property has greatly increased in value in relation to other properties in the municipality. We conclude that although an assessor, absent unusual circumstances that do not exist in this case, cannot be required to make such an interim revaluation of real property, he may do so in accordance with § 12-55, under appropriate circumstances.

This action involves a tax appeal by the plaintiff from a decision of the defendant which affirmed the town assessor's upward reassessment of the plaintiff's property for the 1984, 1985 and 1986 tax years. The plaintiff claimed that the reassessment was excessive and illegal and that, as a result, the plaintiff's property bore a disproportionate share of the tax burden in the town of Rocky Hill. The plaintiff moved for summary judgment, claiming, inter alia, that as a matter of law the defendant was barred from reassessing the plaintiff's

[1] General Statutes § 12-55 provides in pertinent part: "When the lists of any town have been so received or made by the assessors, they shall equalize the same, if necessary, and make any assessment omitted by mistake or required by law. The assessors may increase or decrease the valuation of property as named in any of such lists or in the last preceding grand list, but, in each case of any increase in valuation of such property above the valuation, if any, stated by the person filing such list or in each case of any increase of valuation above the valuation of such property in the last-preceding grand list, they shall send written notice by mail of such increase, including in such notice the valuation prior to and after such increase with respect to each parcel of real property or any improvement thereon, the valuation of which has been increased, to the last-known address of the person whose list or valuation is so changed."

property under the provisions of General Statutes § 12-62.[2] The court denied that motion. The court, in its memorandum of decision, stated that the plaintiff's reliance on *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 438 A.2d 782 (1981), for its claim that § 12-62 precludes interim revaluations, was misplaced. The court noted that, despite dicta in *Uniroyal, Inc.,* that pursuant to § 12-62 "revaluation . . . need only be available once each decade," the *Uniroyal, Inc.* court did not hold that more frequent revaluations are illegal.

The court noted that a judgment of the Superior Court in 1982 found the fair market value of the property in question for the years 1979, 1980 and 1981 to be $23,820,950. It further noted that in 1984 the plaintiff purchased the property for $57,539,739, an increase in value of 141 percent. The court relied on the affidavit of the Rocky Hill tax assessor that stated that he had examined that sale "in light of all other recent residential and commercial property sales in Rocky Hill and found the assessment on the subject property to be grossly out of line with other assessments in the municipality . . . . Therefore, on October 1, 1984, he reassessed the plaintiff's property pursuant to General Statutes §§ 12-55 and 12-62 in order to keep the plaintiff's assessment consistent with other property assessments in the municipality." The court then concluded that the language of § 12-55 providing that "[t]he assessors may increase or decrease the valu-

---

[2] General Statutes § 12-62 provides in pertinent part: "PERIODIC REVALU-ATION OF REAL ESTATE. (a) Commencing October 1, 1978, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the last preceding revaluation of all real property and every ten years after each such revaluation, view all of the real estate of their respective municipalities, and shall revalue the same for assessment and, in the performance of these duties, except in any municipality where there is a single assessor, at least two of the assessors shall act together, and all valuations shall be separately approved by a majority of the assessors."

ation of property as named in any of such lists or in the last-preceding grand list," when read with the language in § 12-64 providing that all property "shall be liable to taxation at a uniform percentage of its present true and actual valuation . . . to be determined by the assessors," empowered assessors to make interim adjustments in assessments. Finally the court stated that "a question of fact exists as to the method the assessor used in making his revaluation and whether or not it conformed to Sec. 12-64."

The plaintiff then moved for reargument of its motion for summary judgment, claiming that the case of *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439–41, 525 A.2d 91 (1987), held that assessors are "precluded" from making interim revaluations based on a change in the fair market value of the property "attributable solely to changes in the market conditions." The court concluded that *Ralston Purina Co.* "clearly holds that the decennial revaluations of real property mandated by General Statutes § 12-62 [are] the exclusive remedy for the town to deal with changes in market values, and more frequent adjustments are not permitted." The court then rescinded its earlier decision denying the plaintiff's motion for summary judgment and granted it. The defendant appealed from the judgment granting the plaintiff's motion for summary judgment, claiming that the assessor had the power under § 12-55 to adjust the assessment in the interim years between decennial revaluations on the ground that the sale of the property in question shows that the property has greatly increased in value in relation to other properties in town.

The facts as found in the court's memorandum of decision, dated June 30, 1987, on the plaintiff's motion for reargument are not in dispute. The plaintiff is the owner of a 941 unit apartment complex known as Century Hills located in Rocky Hill. Pursuant to General

Statutes § 12-62, the town of Rocky Hill conducted a general revaluation of local real estate, effective October 1, 1979. The plaintiff's predecessor in title had contested the 1979 revaluation for the years 1979, 1980 and 1981, which resulted in a final judgment that the true and actual valuation of the property for those years was $23,820,950 and that the assessment should be 70 percent of that figure. The plaintiff purchased the property on March 29, 1984, for $57,339,737. After that purchase, the tax assessor revalued and reassessed the plaintiff's property, finding the true valuation of the property as of October 1, 1984, to be $41,987,500 and the assessed value $29,391,250

The assessor stated in his affidavit that he "reassessed the subject property in light of the sale to the plaintiff and in light of the most recent assessment ratio available on or about October 1, 1984. The revaluation and reassessment was not based on any new construction, physical improvements or changes in the use of the subject property."

In *Ralston Purina Co.*, the plaintiffs[3] appealed to the Superior Court, pursuant to General Statutes § 12-118,[4] from the refusal of the defendant board of tax review of the town of Franklin to reduce the October 1, 1982 tax assessments on their real and personal property

[3] Swiss-American Spawn, Inc., is the plaintiff in the second case combined on appeal with *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 525 A.2d 91 (1987). It operated a spawn production facility near Ralston-Purina's mushroom farm, designed to produce spawn, a protein product used to grow mushrooms.

[4] General Statutes § 12-118 provides in pertinent part: "APPEAL FROM BOARD OF TAX REVIEW. Any person . . . claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated . . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . ."

in that town. The plaintiffs had claimed that the fair market value of their property had declined substantially since the last decennial revaluation conducted by the town, as evidenced by the subsequent sale of the property in 1983 at a price significantly below its assessed value. *Ralston Purina Co.* v. *Board of Tax Review,* supra, 428. The trial court did not discuss whether either of the plaintiffs was entitled to an interim adjustment of its property assessment, but adopted the implicit conclusion of an earlier judge in the case that the defendant was obligated to make such adjustments. The trial court sustained the appeals and ordered a reduction in the assessed values of the properties. This court found error in the court's ruling that the board of tax review was required, as a matter of law, to adjust the plaintiffs' tax assessments in the interim between decennial revaluations of the real property. We noted that an appeal under General Statutes § 12-118 conditions relief upon proof of failure to comply with § 12-64, which in turn provides that all real estate " 'shall be liable to taxation at a uniform percentage of its present true and actual valuation . . . to be determined by the assessors.' " Id., 434. The defendant in *Ralston Purina Co.* v. *Board of Tax Review,* supra, 435, relied principally on the language of General Statutes § 12-62 and this court's interpretation of that statute in *Uniroyal, Inc.* v. *Board of Tax Review,* supra. The defendant board conceded that, under certain circumstances, such as the destruction or expansion of property, a substantial change in its use or zoning classification, or a decision by the taxpayer to go out of business, it would be required to conduct an interim revaluation of property. *Ralston Purina Co.* v. *Board of Tax Review,* supra, 436.

The plaintiffs in *Ralston Purina Co.* argued that although § 12-62 requires revaluation of real estate at least every ten years it does not preclude such revalu-

ation in appropriate circumstances. They emphasized particularly the express language of § 12-64 which provides that all nonexempt real property shall be taxed at its "present true and actual valuation," defined in General Statutes § 12-63 as the "fair market value thereof and not its value at a forced or auction sale." The plaintiffs then claimed that an adjustment in their assessments was required pursuant to General Statutes § 12-55 which states in part that "assessors may increase or decrease the valuation of property as named in . . . the last-preceding grand list." The plaintiffs conceded that § 12-55 appeared to be permissive but that when read in context with §§ 12-62 through 12-64 it mandates the reassessment they sought. *Ralston Purina Co. v. Board of Tax Review*, supra, 436–37.

This court noted that the issue of whether assessors are required to conduct interim revaluations of property to account for the effect of changes in market conditions was not addressed by the pertinent statutes. The court then stated: *"The plaintiffs' reading of the statutes, standing alone, is therefore as plausible as the defendant's interpretation. . . .* [H]owever, the plaintiffs' argument directly contradicts our interpretation of § 12-62 in [*Uniroyal, Inc. v. Board of Tax Review*, supra]." (Emphasis added.) Id., 437.

We then stated: "We held in [*Uniroyal, Inc.,*] *that the decennial revaluation of real property mandated by* § 12-62 is the exclusive remedy provided by the legislature 'for variations in the effect of market conditions on different parcels . . . .' [*Uniroyal, Inc. v. Board of Tax Review*, supra, 629]. Indeed, the procedure established in § 12-62 reflects the legislative judgment that the remedy of revaluation 'need only be available once each decade,' rather than any time property values fluctuate in response to market conditions. [Id.]; see *Kays, Inc. v. Board of Tax Review*, [170 Conn. 477, 480, 365 A.2d 1207 (1976)]; *Bassett v. Rose*, 141 Conn. 129,

134–35, 104 A.2d 212 (1954). The plaintiffs' reliance upon § 12-64 is therefore misplaced because § 12-64, in contrast to § 12-62, 'is concerned with the manner of taxation, not the frequency of valuation, and it does not purport to require assessors to be updated on their valuations at all times.' *Kays, Inc.* v. *Board of Tax Review,* supra; [*Uniroyal, Inc.* v. *Board of Tax Review,* supra, 629]." Id., 437–38.

This court concluded that the legislature was aware that "even though property values may fluctuate within a ten year period, it is neither realistic nor necessarily desirable to require more frequent property revaluations." Id., 438. The court found that it was bound by the interpretation of § 12-62 in *Uniroyal, Inc.,* since the plaintiffs did not provide a convincing rationale for the court to depart from that interpretation. Id., 439. "Since the legislature has not amended § 12-62 subsequent to our decision in *Uniroyal, Inc.,* we can discern no reason now to amend that statute judicially so as to alter the apparent intent of its drafters to preclude, as a general rule, interim revaluations of real property." Id.

The plaintiffs in *Ralston Purina Co.* attempted to distinguish *Uniroyal, Inc.,* on the ground that the plaintiffs in that case claimed that they were bearing a disproportionately high burden of taxes while in *Ralston Purina Co.* they claimed only that the fair market value of their property had declined in the interim period between decennial revaluations. In *Ralston Purina Co.,* we declared: "In the context of this case, however, this distinction has no significance. Although the plaintiffs here rely upon different grounds in challenging their tax assessments, they seek the same relief requested by the plaintiffs and denied by this court in [*Uniroyal, Inc.,*] an interim revaluation of their property. As we concluded in [*Uniroyal, Inc.* v. *Board of Tax Review,* supra, 629], the legislature, in § 12-62,

has precluded such interim revaluations except in unusual circumstances, which did not exist in that case and likewise do not exist here. The plaintiffs presently before us are therefore no more entitled to an interim adjustment of their tax assessments than were the plaintiffs in [*Uniroyal, Inc.*]" Id., 440. The court remanded both cases with direction to render judgments for the defendant.

The defendant in this case first argues that the *Ralston Purina Co.* ruling denying mandatory interim revaluation does not apply to a case where the board is operating permissively under § 12-55. The defendant argues that, except for the generally recognized narrow exceptions where interim reassessment is allowed, the board and the assessors would have a greatly restricted function if they were not able to equalize assessments between decennial revaluations. It claims that just as § 12-55 states that an assessor "shall equalize" the lists "if necessary," General Statutes § 12-111 states that "[s]uch board [of tax review] may equalize and adjust the valuations and assessment lists of such town[s] . . . . "

In its second briefed argument, the defendant, citing *Kays, Inc.* v. *Board of Tax Review,* supra, claims that its interpretation of the effect of § 12-55 does not leave the taxpayer unprotected because he has a remedy if he shows that he has assumed a disproportionate tax burden, a claim the plaintiffs in *Ralston Purina Co.* did not make. The defendant claims that the *Ralston Purina Co.* majority's statement that the lack of an allegation in that case of a disproportionate burden "has no significance" contradicts *Uniroyal, Inc.'s* pronouncement that " '[t]he plaintiffs would be entitled to relief under § 12-118 if [they] could prove that [their] property was bearing a disproportionately high tax burden because of the defendant's failure to comply with § 12-64.' " *Uniroyal, Inc.* v. *Board of Tax Review,* supra, 626.

Thus, it finally argues, the assessor's remedy under § 12-55 when a taxpayer's assessment is disproportionately low is the corollary of the taxpayer's remedy under § 12-118 when his assessment is disproportionately high.

The plaintiff in its brief relies solidly on language previously cited in *Ralston Purina Co.,* which in turn cited *Uniroyal, Inc.,* to the effect that an increase or decrease in the sale price of real property which reflects a change in market conditions may only be adjusted as part of a general revaluation pursuant to § 12-62. The plaintiff quotes the *Uniroyal, Inc.* court which stated that the average ratio of the assessed values of properties to their actual selling prices was "not applicable to discrepancies in valuation which arise during the ten-year period between valuations." *Uniroyal, Inc.* v. *Board of Tax Review,* supra, 630.

The plaintiff stresses that the limitation on the assessor's power to make interim revaluations, only in the unusual circumstances referred to in *Ralston Purina Co.* v. *Board of Tax Review,* supra, 435–46, is also reflected in two statutory exceptions, General Statutes § 12-53a, permitting a reassessment where new construction is completed on property between revaluations, and General Statutes § 12-64a, authorizing a reduction in the assessed value of property upon the demolition and removal of damaged buildings.

The plaintiff points out that the defendant's argument is exactly that raised by Justice Shea's dissent in *Ralston Purina Co.,* when Justice Shea argued that § 12-55 should be read to authorize assessors to "increase or decrease the valuation of property" in fulfillment of their duty to "equalize" the annual tax lists of a town but only "when special circumstances pertaining only to one property result in a substantial change in its value." Id., 442. The plaintiff's conclud-

ing argument is that § 12-55 is no more than an administrative statute which sets forth the procedure for noticing a change in the valuation of property. It provides, the plaintiff claims, no independent authority upon which an assessor may rely in making such a change, other than permitting the making of assessments "omitted by mistake" or "required by law."

We look first to the holding in *Uniroyal, Inc.* v. *Board of Tax Review,* supra. The plaintiffs, pursuant to § 12-118, appealed to the Superior Court from the refusal of the board of tax review to reduce the valuation of its land and buildings in Middlebury. The trial court rendered judgment for the defendant on the ground that the plaintiffs were not aggrieved by the action of the board and the plaintiffs appealed to this court. Id., 620.

Although not explicitly articulated in *Uniroyal, Inc.,* it is clear from the above facts that the plaintiffs were seeking mandatory interim revaluation. Their first argument was that the trial court erred in not concluding that their property was bearing a disproportionately high burden of taxes in Middlebury and in failing to equalize the tax burden to that of other property in the town. Id., 622. This court discussed § 12-64, providing that all nonexempt real estate "shall be liable to taxation at a uniform percentage of its present, true and actual valuation to be determined by the assessors . . . ." Id., 623. It then analyzed the plaintiffs' extensive expert testimony concerning the average ratio of the assessed values of Middlebury properties to their actual selling prices for certain years in question. Id. The court then discussed at length the use of average ratio analyses to establish the unfairness of assessment practices. Id. It then pointed out that the plaintiffs introduced the average ratio evidence in an effort to demonstrate that although the assessor applied a 65 percent valuation factor to their property,

they actually applied a much lower valuation to other Middlebury property. It stated that "[s]uch a practice would violate the requirements of General Statutes § 12-64. The plaintiffs would be 'entitled to relief under § 12-118 if [they] could prove that [their] property was bearing a disproportionately high tax burden because of the defendant's failure to comply with § 12-64.' *Kays, Inc.* v. *Board of Tax Review,* 481, quoting *Lerner Shops of Connecticut, Inc.* v. *Waterbury,* [151 Conn. 79, 86, 193 A.2d 472 (1963).] As our cases indicate, relief under § 12-118 is conditioned upon proof of failure to comply with § 12-64." Id., 626.

The court then found that the average ratio evidence did not prove any violation of the statutory assessment scheme. Id., 627. The court concluded that the plaintiffs' property most likely benefited from continued use of the 1971 valuation figures for assessment purposes throughout the 1970s and the failure of the 1971 figures to reflect property value increases in subsequent years, as much as any other property owner. Such variation accruing within ten year periods is a permissible variation under § 12-62. Id., 629. It then made the statement previously cited, that "in Connecticut, the remedy for variations in the effect of market conditions on different parcels is set forth in General Statutes § 12-62. The remedy of revaluation was established by the legislature and it was the judgment of the legislature that the remedy need only be available once each decade." Id.

It is not necessary to consider the defendant's claim that there is a conflict between *Ralston Purina Co.* and *Uniroyal, Inc.,* for in the context of this case this court's quotation in *Ralston Purina Co.* (p. 438) from *Uniroyal, Inc.,* (p. 629) that the procedure in § 12-62 "need only be available once each decade" is dicta. The language "need only be available" refers to a mandatory reassessment. That case has no bearing on the question of

permissive interim revaluation as a *power* of the assessors under § 12-55, nor did *Uniroyal, Inc.*, on which *Ralston Purina Co.* relied, concern the question involved in this case. Further, the right of a taxpayer to seek interim relief under § 12-118 on a claim of a disproportionate burden need not come into play. The resolution of the issue in this case requires only that we go directly to the plain language of § 12-55, shorn of any irrelevant judicial gloss adhering to it.

Section 12-55 contains three operative phrases pertinent to our inquiry: (1) "When the lists of any town have been so received or made by the assessors, *they shall equalize the same,* if necessary"; (2) *"make any assessment omitted by mistake or required by law";* and (3) *" the assessors may increase or decrease the valuation of property as named in any such lists or in the last preceding grand list . . . . "* (There follow directions for notice to a taxpayer in the event of an increased assessment.) (Emphasis added.) There is no ambiguity in this broad grant of powers to assessors. It is a clear legislative mandate to grant to local assessors a continuing duty unrelated to decennial revaluations, to achieve administratively a fair and equal assessment for all taxpayers. The power to equalize the lists, if necessary, imports a watchtower role for the assessor to correct inequalities, whether too high or too low. The "if necessary" language clearly comprehends interim changes in assessments for there is no such requirement in § 12-62 which mandates decennial revaluations. The latter have obviously been legislatively deemed necessary.

The plaintiff claims that § 12-55 only authorizes changes "omitted by mistake" or "required by law." Such a restrictive interpretation ignores the plain language of the statute. The fact that these two additional powers are specifically set out does not in any way limit the broad power to equalize assessments provided for

earlier in the statute. The most logical interpretation of the effect of these two additional powers is that in addition to the power to equalize assessments the assessors are also empowered to make these specified changes. Assessing property omitted by mistake is a common sense administrative duty having no relation to the "equalizing" function of the assessors. The same may be said of the added function of making any assessment "required by law." If it is required by law, the assessors are required to make it whether or not it is included in this section. Finally, the statute specifically gives to assessors the power to increase or decrease the value of assessed property. " '[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment.' " *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974). "In construing a statute, common sense must be used and we must assume that the legislature intended to accomplish a reasonable and rational result." *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985).

We conclude that the assessors in Rocky Hill did have the power under § 12-55 to adjust a real estate assessment in the interim years between decennial revaluations on the ground that a sale of the property in question showed that the property had greatly increased in value in relation to other properties in the town.[5] Because the summary judgment proceeding provided no occasion for the resolution of a disputed issue

---

[5] See *Stop & Shop Cos.* v. *East Haven,* 13 Conn. App. 393, 399, 536 A.2d 991, cert. granted, 207 Conn. 810, 541 A.2d 1239 (1988). The court held that a town may value personal property annually while revaluing real property every ten years; language in General Statutes § 12-55 giving assessors the authority to increase or decrease the "value of property" provides for a "permissive valuation of property in the years between the decennial revaluations, without requiring it."

of fact, the necessary proof of such a disparate rise in value of the plaintiff's property has not been made in this case. The trial court declared in its memorandum of decision denying the plaintiff's first motion for summary judgment, that there existed a question of fact as to the method the assessor had used in making his revaluation and whether it conformed to § 12-64. These and other issues of fact can only be resolved at trial.

There is error, the judgment is set aside and the case is remanded with direction to deny the renewed motion for summary judgment and for further proceedings.

In this opinion SHEA, CALLAHAN and GLASS, Js., concurred.

ARTHUR H. HEALEY, J., dissenting. I do not agree with the majority that "a municipal assessor has the power, under General Statutes § 12-55, to increase a real property assessment between decennial revaluations on the ground that a sale of property in question demonstrates that the property has greatly increased in value in relation to other properties in the municipality." I, therefore, dissent.

The majority reads § 12-55 as "a clear legislative mandate to grant to local assessors a continuing duty unrelated to decennial revaluations, to achieve adminsitratively a fair and equal assessment for all taxpayers." This "power to equalize the lists, if necessary," the majority opines, "imports a watchtower role for the assessor to correct inequalities, whether too high or too low." The "if necessary" language, the majority goes on, "clearly comprehends interim changes in assessments for there is no such requirement in [General Statutes] § 12-62 which mandates decennial revaluations."

I do agree with the majority that "statutes should be construed so that no part of a legislative enactment

is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974). Statutes relating to the same subject matter, such as the property tax assessment statutory scheme, may be looked to for guidance in reaching an understanding of the meaning of a statutory term. *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491 (1978). Where we have, as we do here, a statutory scheme for property tax assessments, we should "make every effort to construe a statutory scheme as a consistent whole." *Powers* v. *Ulichny,* 185 Conn. 145, 149, 440 A.2d 885 (1981). Needless to say, prior decisions of this court, especially recent decisions touching on relevant statutory constructions, are entitled to weighty consideration. This is especially significant where this court interprets a statute and the legislature fails to take action to change that interpretation, thus raising a presumption that the legislature has acquiesced in that interpretation. *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.10. "It is fundamental . . . that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question." 2A J. Sutherland, supra; see *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980). Courts are warranted in presuming that a reasonable and rational result was intended by the legislature. See *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975).

I, therefore, do not find the "clear legislative mandate" granted municipal assessors that the majority does in § 12-55. That statute is "indeed administrative," as even the defendants specifically concede in their brief. It is

entitled "Lists; notice of increase; public inspection; abstracts." Cf. General Statutes § 12-62, entitled "Periodic revaluation of real estate." Section 12-55 sets out the administrative procedure for the assessor to follow for giving notice of a change in the valuation of property. The first sentence of § 12-55 has been literally the same in this statute for at least seventy years. In like fashion, the language of the second sentence, "The assessors may increase or decrease the valuation of property as named in any such lists, or in the last preceding grand list . . . " has been literally the same for at least seventy years. The only amendment to this statute over this period concerns to whom and how the notice of any increase[1] in valuation is to be given. It strikes me as highly unusual, from a practical standpoint, that if the "clear legislative mandate" the majority finds in § 12-55 exists, no point has been made by counsel for the town that this is the manner in which assessors have treated § 12-55 at least for the last seventy years.

In my view, § 12-55 gives assessors the authority to equalize, "if necessary," because of any assessment that was either "omitted by mistake" or "required by law." I cannot agree with the majority's interstitial judicial legislation of the "if necessary" language of this statute. If anything is clear in the contested portion of § 12-55, it is that the assessor equalizes the list when there are omissions or something "required by law" that makes it "necessary." I note that the majority is silent about what "required by law" means. I suggest that it is quite plausible that it includes, if it is not confined to, those circumstances reasonably within the

---

[1] It is interesting to note that although General Statutes § 12-55 does have language that says that "[t]he assessors may increase or decrease the valuation of property as named in any of such lists . . . " it only provides for notice to the person (presumably the taxpayer) of any *increase* in the valuation. This statute is silent on the matter of notice to be given in the event of any *decrease.*

reach of General Statutes §§ 12-53a[2] and 12-64a.[3] Section 12-53a permits reassessment between decennial revaluations where new construction is completed on

[2] General Statutes § 12-53a, entitled "Assessment and taxation of new real estate construction," provides in part: "(a) Completed new construction of real estate completed after any assessment date shall be liable for the payment of municipal taxes from the date the certificate of occupancy is issued or the date on which such new construction is first used for the purpose for which same was constructed, whichever is the earlier, prorated for the assessment year in which the new construction is completed. Said prorated tax shall be computed on the basis of the rate of tax applicable with respect to such property, including the applicable rate of tax in any tax district in which such property is subject to tax following completion of such new construction, on the date such property becomes liable for such prorated tax in accordance with this section.

"(b) The building inspector issuing the certificate shall, within ten days after issuing the same, notify, in writing, the assessor of the town in which the property is situated.

"(c) Not later than ninety days after receipt by the assessor of such notice from the building inspector or from a determination by the assessor that such new construction is being used for the purpose for which same was constructed, the assessor shall determine the increment by which assessment for the completed construction exceeds the assessment on the taxable grand list for the immediately preceding assessment date. He shall prorate such amount from the date of issuance of the certificate of occupancy or the date on which such new construction was first used for the purpose for which same was constructed, as the case may be, to the assessment date immediately following and shall add said increment as so prorated to the taxable grand list for the immediately preceding assessment date and shall within five days notify the record owner as apppearing on such grand list and the tax collector of the municipality of such additional assessment."

[3] General Statutes § 12-64a, entitled "Reduction in assessed value of real estate upon removal of damaged buildings," provides in part: "Whenever a building is so damaged as to require total reconstruction before it may be used for any purpose related to its use prior to such damage and following which, the owner provides for complete demolition of such building with the material from demolition being removed from the parcel of real property on which the building was situated or used as fill on such parcel for purposes of grading, such parcel shall be assessed for purposes of property tax as of the date such demolition, removal and grading are completed, to the satisfaction of the building inspector in the municipality, and such assessment shall reflect a determination of the assessed value of such parcel, exclusive of the value of the building so damaged, demolished and removed. The adjusted assessment shall be applicable with respect to such parcel from the date demolition, removal and grading are completed, as

property. Section 12-64a authorizes an adjusted assessment value whenever a building is damaged, demolished and removed as set out in that statute.

This statute, i.e., § 12-55, does not confer upon the assessor the authority that the majority grants that officer. To so hold practically turns the majority opinion in *Ralston Purina Co.* v. *Board of Tax Review,* supra, on its head despite the present majority's exegesis of *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 438 A.2d 782 (1981).[4] The *Ralston Purina Co.* majority rejected the claims of the dissent in that case that § 12-55 should be read to authorize assessors to "increase or decrease the valuation of property" to carry out their task to "equalize" the lists "when special circumstances pertaining only to one property result[s] in a substantial change in its value." *Ralston Purina Co.* v. *Board of Tax Review,* supra, 442 *(Shea, J.,* dissenting). In rejecting that argument, the *Ralston Purina Co.* majority referring to *Uniroyal, Inc.,* said that the assessor was precluded under § 12-62, from making interim revaluations absent certain circumstances which it found nonexistent in *Ralston Purina Co.* v. *Board of Tax Review,* supra,

determined by said building inspector, until the first day of October next succeeding and the amount of property tax payable with respect to such parcel for the assessment year in which demolition, removal and grading are completed shall be adjusted accordingly in such manner as determined by the assessor."

[4] Contrary to what the majority states, I believe it *is* necessary to consider the defendant's claim that there is a conflict between *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 525 A.2d 91 (1987), and *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 438 A.2d 782 (1981). Here, the majority claims that "in the context of this case this court's quotation in *Ralston Purina Co.* (p. 438) from *Uniroyal, Inc.,* (p. 629) that the procedure in § 12-62 'need only be available once each decade' is dicta."

Even assuming it is dicta, the majority should discuss it in view of the nexus between *Ralston Purina Co.* depending as it does on *Uniroyal, Inc.,* on the one hand and, on the other hand, the treatment of *Ralston Purina Co.* by the majority in this appeal. The quoted statement of the majority in this footnote cannot serve as a sort of judicial circuit-breaker to foreclose any meaningful analysis of the distinction claimed by the defendant.

439. In that case, the "certain circumstances" were said to be "such as the destruction or expansion of property, a substantial change in its use or zoning classification, or a decision by the taxpayer to go out of business . . . . " Id., 435–36; see generally General Statutes §§ 12-53a and 12-64a. None of those existed in *Ralston Purina Co.*, none of those exist in this case, and § 12-55 cannot reasonably be interpreted in this case to accomplish here what our construction of § 12-62 in *Ralston Purina Co.* and *Uniroyal, Inc.*, precluded. The *Ralston Purina Co.* majority properly noted that we would not reexamine our interpretation of § 12-62 set out in *Uniroyal, Inc.*, because the legislature had not amended § 12-62 after *Uniroyal, Inc. Ralston Purina Co.* v. *Board of Tax Review,* supra, 439. I submit that it is also unnecessary to do so in this appeal.

Not only is this decision inconsistent with *Ralston Purina Co.* on a jurisprudential basis, it raises serious concerns about fairness to the property owners of this state. Since *Ralston Purina Co.* is still good law, a property owner is not required to be given any interim relief, absent special circumstances, even if his property has a drop in value. This is so even though the majority purports to assign a "watchtower role for the assessor to correct inequalities, whether *too high* or too low." (Emphasis added.) Therefore, despite the majority's claim, to borrow a metaphor from another dissent, "[a]fter you have brushed the foam off the beer"; *Horton* v. *Meskill,* 172 Conn. 615, 658, 376 A.2d 359 (1977) *(Loiselle, J.,* dissenting); the majority's interpretation of § 12-55 does not truly "equalize" property assessments. They *may* increase an assessment whenever the present assessment is low as compared to similar properties, but *may* choose *not* to decrease the assessment of a property owner who has suffered a decrease in the value of his property such as a decrease

of approximately 70 percent in value that we refused to recognize in *Ralston Purina Co.* This unfairness highlights the flaw in the majority's analysis of the statutory scheme. I conclude that § 12-62, entitled "Periodic revaluation of real estate," is the operative statute. Under any logical and consistent reading of *Ralston Purina Co.*, not only may the tax assessor not be forced to decrease an assessment on a taxpayer's property, but that officer cannot increase a taxpayer's assessment, absent certain limited circumstances, except every ten years under § 12-62.

I would affirm the trial court, and, accordingly, I dissent.

