[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
ISSUES
Whether the City of Groton's franchise to provide itself and the Town of Groton with natural gas is exclusive. Whether Groton is entitled to an injunction to keep Yankee Gas services Company from operating within Groton.
FACTS
The following facts are undisputed. The City of Groton (Groton) was granted a gas franchise in 1913. See Application for Temporary Injunction Exhibit B; Trial Exhibit A. In 1927, The Connecticut Light Power Company (CLP) was granted a gas franchise which allowed CLP to conduct gas business anywhere in the state, subject only to a limitation that the territory not be already "occupied and served" by another company. See Trial Exhibit 2.
In 1955, Mohawk Gas Company (Mohawk) was granted a gas franchise by the State. On May 30, 1989, Mohawk amended its charter to change its name to Yankee Gas Service Company (Yankee). See Trial Exhibit 1. In June 1989, CLP, as part of the sale of its entire gas business to Yankee, assigned its gas franchise rights to Yankee. See Trial Exhibit 6.
Yankee has built a gas pipeline capable of serving the Groton franchise area with natural gas. This pipeline is currently extended to just inside the Groton town boundary line with Ledyard.
On July 22, 1991, plaintiff, City of Groton, filed a three count verified complaint and application for temporary injunction against Yankee in order to prevent Yankee from entering Groton's franchise area. On September 10, 1991, Yankee filed an answer and four special defenses to Groton's complaint.
The trial was held September 11, 13 and 24, 1991 and October 2, 7 and 8, 1991. During this time, the parties called 6 witnesses, filed 49 exhibits, 23 for the plaintiff and 26 for the defendant, and inundated the court with a continuous stream of briefs and memoranda too many to enumerate, regarding the issues of franchise and injunctive rights.
DISCUSSION
Groton's claim to an injunction is based upon the premise that an exclusive franchise to sell gas in the Town and City of Groton has been granted. This was based upon Special Laws passed in 1902 and 1913 which authorized the City to CT Page 9840 produce and supply water, electricity and in 1913 gas to the residents of the franchise area.
The Groton franchise, Trial Exhibit A, does not state that it is an exclusive franchise. However, Groton argued that it was exclusive even though it did not say so. It also produced a witness, Albert Kleban, former Chairman of the Public Utilities Commission who testified that in his opinion that all gas and electric franchises are exclusive even if the statute does not so state.
In Black's Law Dictionary a franchise is defined as:
 "A special privilege to do certain things conferred by government on individual or corporation, and which does not belong to citizens generally of common rights. "
 "Exclusive Privilege or Franchise — A statute does not grant an "exclusive" privilege or franchise, unless it shuts out or excludes others from enjoying a similar privilege or franchise."
Black's Law Dictionary, (4th Edition 1951) p. 787 and 675.
By definition then unless the statute granting a franchise specifically states that others are shutout or excluded from the franchise the franchise is not "exclusive" and others are not barred from enjoying a similar franchise.
Groton alleges that it has an exclusive franchise to provide natural gas service to businesses and residents of the city and town of Groton. In making this claim, Groton relies on Special Law 429 (1903) which incorporated the borough of Groton, and gave Groton the right to produce, generate, manufacture and supply itself and its residents with water and electricity (Application for Temporary Injunction Exhibit A), and Special Law 155 (1913) which amended the 1903 charter by authorizing Groton to produce, generate and manufacture gas for use by itself and its residents. (Application for Temporary Injunction Exhibit B). These documents comprise Groton's franchise rights.
While acknowledging that Groton was granted a gas franchise, Yankee argues that such franchise is not exclusive. Yankee further argues that is has gained, through its acquisition of CLP's gas franchise, (see Trial Exhibit 6), the right to supply natural gas to any area not already supplied CT Page 9841 with gas. Yankee argues that because Groton has not exercised its gas franchise, Yankee may enter the Groton franchise area and supply the area with gas under the authority it acquired from CLP.
Exclusivity of Franchise
Groton's gas franchise does not explicitly state that it is exclusive. Yankee argues that absent explicit language stating that a franchise is exclusive it should not be read as such by the court.
Groton argues that even absent the word "exclusive", franchises in Connecticut have always been understood to be so, relying on Enfield Toll Bridge Co. v. Connecticut River Co.,7 Conn. 28 (1828). In Enfield Toll Bridge, plaintiff had been granted a charter by the Connecticut General Assembly to build a bridge and locks in the river under the bridge, and collect tolls for the use of each. Plaintiff in Enfield Toll Bridge did build the bridge and had plans to create and operate the locks. Defendant in Enfield Toll Bridge was granted a charter by the Connecticut General Assembly to create and maintain a lock on the same river in a nearby location.
The court in Enfield Toll Bridge held that the erection of the locks was an "indispensable adjunct" to the building of the bridge, and that defendant's franchise would "annihilate the toll receivable" by plaintiff. Enfield Toll Bridge, supra, 43.
 The consideration, by which individuals are invited to expend money upon great, expensive and hazardous public works, as roads or bridges, and to become bound to keep them in constant repair, is the grant of the right to an exclusive toll. This right, thus purchases for a valuable consideration, cannot be taken away, by direct or indirect means . . . .
Enfield Toll Bridge, supra, 48-49. (Emphasis in original).
Enfield Toll Bridge Co. v. Connecticut River Co., supra, is distinguishable from the case currently before this court. In Enfield Toll Bridge, the bridge and locks were considered an integral whole, created by a single franchise grant, and plaintiff had already built the bridge when defendant tried to build its own locks on the river. Thus, plaintiff was already exercising its franchise rights. In the case at hand, Groton has never exercised its right to supply gas to the CT Page 9842 franchise area.
As Groton's gas franchise was a separate and distinct grant from its water and electricity franchises, the gas franchise cannot be said to be an integrated part of those other franchises, which Groton may have already exercised. Therefore, the Enfield Toll Bridge case does not support plaintiff's argument that all franchises are automatically considered exclusive.
Rules of statutory construction are applicable to a franchise grant since the grant is an act of the legislature. As such, the court should not extend the franchise grant beyond the clear language used in the special act creating it. See Local 218 Steamfitters Welfare Fund v. Cobra Pipe Supply Coil Co., 207 Conn. 639, 645, 541 A.2d 869 (1988).
The court therefore finds that because Groton's franchise grant does not specifically state that it is exclusive, Groton does not have an exclusive right to provide gas to its franchise area.
By definition in Black's Law Dictionary, supra, "A statute does not grant an exclusive privilege or franchise unless it shuts out or excludes others from enjoying a similar privilege or franchise." (underlining added).
"Occupied and Served"
Groton argues that even if the court determines that its franchise is not exclusive, Yankee should still not be allowed to enter the franchise area because Groton is already occupying and serving the area with gas.
Yankee argues that Groton has only talked about providing gas and merely authorized a feasibility study regarding the possibility of Groton providing gas to its franchise area. Yankee argues that indefinite plans and a feasibility study do not amount to serving the franchise area with gas.
Both the original Mohawk/Yankee charter and the CLP charter forbid the charter holder from entering an area already served with natural gas. See Trial Exhibits 2 and 7.
The court finds that Groton's vague plans are tenuous at best and do not constitute serving the franchise area with gas. Therefore, the Groton franchise area is not being occupied and served with gas. Accordingly, the restriction contained in the Yankee and CLP charters is not an impediment to Yankee CT Page 9843 entering and serving the franchise area with gas.
Sections 2(b) and 2(d) of Yankee's Charter
Groton next argues that Section 2(b) of Yankee's charter requires Yankee to obtain consent from the municipal franchise areas that it seeks to enter. Groton argues that as Yankee has not secured such consent from Groton, Yankee may not enter the Groton franchise area.
Yankee argues that Section 2(d) of its charter authorizes it to acquire all gas rights of any gas company it may acquire by sale or merger. Yankee argues that the limitations contained in Section 2(b) apply only to that particular subsection.
Section 2 of Yankee's charter reads in its entirety as follows:
 Said corporation is vested with the power, subject to the limitations hereinafter stated: (a) To build, acquire by lease, purchase or otherwise, own and operate one or more pipelines and related facilities, including compressors, pumping stations, tanks storage facilities, mains, appliances and other pertinent equipment for the gathering, mixing, transmission and distribution of natural, manufactured and mixed gas and the by-products thereof; (b) to buy, manufacture, produce, sell, furnish, transport, store, distribute, dispose of and otherwise deal in natural, manufactured and mixed gas and the by-products thereof; provided within the franchise area of any person, firm, corporation or municipality which is chartered or authorized by the state of Connecticut to transmit or sell gas within said franchise area, this corporation shall not exercise the authority granted by this section to sell natural, manufactured or mixed gas to any person, firm, corporation or municipality except a person, firm, corporation or municipality so authorized to transmit or sell gas within such franchise area; (c) to install, operate and maintain, subject to any requisite approval of public authority, pipelines, mains and related appliances necessary for the transmission, storage and distribution CT Page 9844 of gas, either overhead or underground, over or under streams and in, over, under and upon the public highways, streets, avenues and public parks or grounds in any town, city and borough with this state; (d) to acquire by merger, consolidation, lease, purchase or otherwise, upon such terms and conditions as may be agreed upon, and in the manner and subject to the terms and conditions provided by the general statutes in the case of the merge or consolidation or other acquisition of corporations organized under the general statutes, and to hold, own, use, exercise, enjoy and dispose of the whole or any part of the gas property, rights, privileges, properties, securities, contracts, powers and franchises now or hereafter owned or possessed by any gas company chartered by the general assembly of the state of Connecticut for the purchase, manufacture, production, transmission, distribution and sale of natural, manufactured and mixed gas and matters incidental thereto.
Trial Exhibit 1.
The language of limitation relied on by Groton appears only in Section 2(b). Sections 2(a), 2(c) and 2(d), which are separate grants of powers, contain no such limitations. The court is of the opinion that if the limitation contained in Section 2(b) were meant to apply to the entire section, it would appear in the prefatory language of the section rather than within the body of a specific subsection.
A statute should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary. 84 Century Limited Partnership v. Board of Tax Review, 207 Conn. 250, 263, 541 A.2d 478 (1988). "It is a basic rule of statutory construction that a statute is to be construed as a whole. . . ." Rustici v. Stonington, 174 Conn. 10, 13,381 A.2d 532 (1977); see also Statewide Grievance Committee v. Rozbicki, 211 Conn. 232, 241, 558 A.2d 986 (1989). The limitation, therefore, is intended to apply only to the subsection in which it appears, namely Section 2(b).
If the limitation contained in Section 2(b) were to be read as applying to Section 2(d), the language in Section 2(d) that Yankee may acquire "the whole or any part of" a gas franchise would be rendered meaningless. It is clear therefore CT Page 9845 that the limitation contained within Section 2(b) does not apply to Section 2(d).
The court finds that Yankee acquired the rights of CLP's gas franchise pursuant to Section 2(d). CLP's franchise does not contain any language requiring it to obtain permission from municipalities before entering their franchise area. See Trial Exhibit #6. When Yankee acquired CLP's ability to enter an area not already served by gas without first obtaining the consent of the municipality. Yankee's charter, under Section 2(d), has always included the explicit authority to acquire and exercise the "whole" of the franchise rights granted by the Connecticut General Assembly to any other Connecticut gas company and that therefore this argument of Groton fails.
Injunctive Relief
"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. The allegations and proof are conditions precedent to the granting of an injunction." Hartford v. American Arbitration Assn., 174 Conn. 472, 476, 391 A.2d 137
(1978) (citations omitted). "The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted." Karls v. Alexandra Realty Corp., 179 Conn. 390, 402,426 A.2d 784 (1980).
In its application for a temporary injunction, Groton argues that it will be irreparably injured if Yankee lays pipe within the borders of Groton's exclusive franchise area. In order to obtain an injunction, Groton needed to prove that its gas franchise is exclusive. The court has found that Groton's gas franchise is not exclusive. It is therefore ordered that Groton's motion for a temporary injunction be denied.
CONCLUSION
The court finds that Groton's gas franchise is not exclusive.
The court also finds that Groton is not currently serving its franchise area with natural gas.
The court further finds that the rights Yankee acquired through CLP'S gas franchise under Section 2(d) of Yankee's charter are not limited by Section 2(b) of Yankee's charter.
Finally, the court finds that Groton is not entitled CT Page 9846 to injunctive relief in order to prevent Yankee from entering the franchise area and supplying natural gas.
Hurley, J.