[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this proceeding originally appealed from the action of the Tolland board of tax review (the Board) approving the assessor's valuation of the plaintiffs' property on the list of October 1, 1993. The plaintiffs later amended the original appeal by adding a count making the appeal apply also to the valuation on the list of October 1, 1994; the parties have agreed , however , that the court is to enter judgment only as to the valuation on the list of October 1, 1993.
The plaintiffs' original appeal is dated March 3, 1994. In that appeal, the plaintiffs claim that the valuation that the assessor and the Board placed on their property for purposes of taxation by Tolland (Tolland's 1993 valuation) is "grossly excessive, disproportionate and unlawful." The gravamen of that claim is that Tolland's 1993 valuation violates the two statutes that define the basic criteria that town assessors and boards of tax review must use in valuing property for purposes of taxation by towns. One of those statutes is General Statutes sec. 12-64, which provides that property not exempt from taxation shall be liable to taxation at a uniform percentage of "its present true and actual valuation." The other statute is General Statutes sec.12-63, which provides that the words "present true and actual valuation" mean "fair market value" and "not . . . value at a forced or auction sale." As required by General Statutes sec.12-62a (b), for purposes of local taxation Tolland has assessed property liable to taxation "at a uniform rate of seventy percent of present true and actual value, as determined under section12-63." CT Page 12554-C
The appeal of the plaintiffs has been referred to me, as a state trial referee, for a hearing and entry of judgment. In the course of the hearing, several exhibits were introduced, and several witnesses testified, including an appraiser for the plaintiffs and an appraiser for the defendant. Each of the appraisers also submitted his report. At the conclusion of the hearing, the court viewed the property on foot. The court also had the benefit of a brief and a supplemental brief submitted by each of the parties at the request of the court.
 I
The plaintiffs' property is an irregularly-shaped, uneven, unimproved, largely-spent gravel bank bounded on the east by Sand Hill Road and on the north by Tolland Stage Road. The property was quit-claimed to the plaintiffs in 1976; the deed did not specify the length of any of the four sides but did specify the area as "thirteen and one-half (13-1/2) acres more or less." In 1991, when Tolland conducted a decennial revaluation, the Tolland assessor determined that the area of the property is 15.8 acres. On the decennial revaluation list of October 1, 1991, the assessor valued the property at $452,400, with a resulting 70% assessment of $316,680. The plaintiffs did not appeal either that valuation or that assessment. On the list of October 1, 1992, the valuation and assessment are the same as on the list of October 1, 1991. Similarly, the plaintiffs did not appeal the 1992 valuation or assessment.
In January, 1994, the defendant sent to the plaintiffs a notice stating, in part, "Pursuant to the provisions of Sec.12-55 of the General Statutes, . . . you are hereby notified that the assessor has assessed your property in the Tax records for the year 1993 at $329,180. . . ." The defendant initially claimed, during the present hearing, that the assessor made this $12,500 increase in assessment to correct a "clerical error" that had understated the area of the plaintiffs' property by seven-tenths of an acre, i.e. using 15.8 acres instead of 16.5. The defendant could not sustain that claim, however, because, among other reasons, the notice did not "include . . . the reason for such increase," as required by the statute concerning correction of "clerical errors," General Statutes sec. 12-60. The defendant specifically abandoned, however, the "clerical error" claim in its brief, and supplanted that claim by the claim that the assessor had the power to increase the assessment under General CT Page 12554-D Statutes sec. 12-55.
That statute, in its first sentence, authorizes assessors to do the following: a) equalize lists, if necessary; (b) make any assessment omitted by mistake or (c) make any assessment required by law. The defendant does not claim that the assessor increased the assessment on the plaintiffs' property to "equalize the lists". Nor can the defendant rightly claim that by increasing the assessment on the plaintiffs' property the assessor "made an assessment omitted by mistake"; the assessor had made an assessment of the plaintiffs' property before he increased the assessment, so the assessor did not "omit" an assessment by mistake. With respect to the meaning of the phrase, "or required by law," both the majority and dissenting opinion in 84 Century Ltd.Partnership v. Board of Tax Review, 207 Conn. 250,263, 541 A.2d 478
(1988) mention the phrase, but only the dissenting opinion (at 266) makes a specific suggestion as to its meaning, i.e. that it refers to "those circumstances reasonably within the reach of General Statutes [sections] 12-53a and 12-64a" Neither of those two statutes is relevant to this case.
Even though the specific authorizations in the first sentence of General Statutes sec. 12-55 do not apply to the assessor's increase in this case, that statute also contains broad grants of power to assessors to increase or decrease the valuation of property on the lists: "The assessor . . . may increase or decrease the value of property as named in any of such lists or in the last preceding grand list . . ." The specific authorizations in the first sentence do not restrict these broad grants of power in the remainder of the statute. 84 Century Ltd.Partnership, supra at 262-263. Nevertheless, in the opinion of this court, the assessor did not have the power in this case to increase, on the list of October 1, 1993, the assessment on the plaintiffs' property.
The basic reason for that opinion is that the power of assessors under General Statutes sec. 12-55 has to be construed in the light of General Statutes sec. 12-62, the statutory provisions concerning decennial revaluations. The broad language of sec. 12-55 has been the same for more than seventy years (see Healey, J., dissenting in 84 Century Ltd. Partnership, supra, at 266), but the broad sweep of that language has been shrunken by the terms and purpose of recent legislation based on a legislative preference for revaluations regularly only once in CT Page 12554-E every ten years.
On April 26, 1988, in 84 Century Ltd. Partnership, supra at 251, the sole issue was "whether an assessor has the power, under General Statutes sec. 12-55, to increase a real property assessment between decennial revaluations on the ground that a sale of the property in question demonstrates that the property has increased in value in relation to other properties in the municipality." The court ruled that "absent unusual circumstances," the assessor may not be required to make such an interim revaluation, but may do so under sec. 12-55, under appropriate circumstances.
The decision in 84 Century Ltd. Partnership, supra, was followed by two relevant statutes. The first, which plainly showed immediate legislative disapproval of the decision in that case, was approved on May 10, 1998, [1988] only two weeks after the decision was announced. The new statute was enacted as sec. 9 of P.A. 88-321; is now General Statutes sec. 12-63d; and denies the assessor the power to make a change in assessment, compared with the immediately preceding assessment, solely on the basis of the sale price in a sale or transfer. The relevance of this statute is that it deprives an assessor of the power to increase an assessment that, under the decision in 84 Century Ltd.Partnership, supra, he would otherwise have had the power to make under sec. 12-55.
The second relevant statute is included in subparagraph (a) of General Statutes sec. 12-62. That subparagraph was enacted in 1989 as part of sec. 190 of P.A. 89-251, which amended sec. 12-62
and provided, inter alia, in the first sentence, for decennial revaluations commencing October 1, 1991. The second sentence of that subparagraph provides, "The assessments derived from each such revaluation shall be used for the purpose of levying property taxes in such municipality in the assessment year in which such revaluation becomes effective and in each assessment year thereafter until the next succeeding revaluation in accordance with this section becomes effective." Applied to the facts in this case, this provision of the General Statutes clearly mandates that the 1991 revaluation assessment "shall be used for the purpose of levying property taxes" in the 1993 assessment year. The 1991 revaluation assessment on the plaintiffs' property was used for levying taxes in the 1991 assessment year, and that assessment must be used for levying taxes in the 1993 assessment year. By this legislation, the CT Page 12554-F General Assembly finished the task, that it had begun in 84Century Ltd. Partnership, supra, of limiting the powers of assessors under General Statutes 12-55 in the interim between decennial assessments.
That, under accepted principles of statutory construction, the word "shall" in this statute is mandatory is clear. Even if the statute had used the word "may" instead of "shall," a mandatory construction would be required. "The accepted rule in such cases is that if, in a statute conferring power and authority for the benefit of the public, or of a third person, or of individuals generally, the word `may' is used, it shall be construed as equivalent to `shall,' and that the statute is mandatory and not permissive or discretionary." State ex rel.Foote v. Bartholomew, 103 Conn. 607, 612, 132 A. 30 (1925).
It should be noted that the plaintiffs' property on the list of October 1, 1991 is the identical property on the list of October 1, 1993. The evidence was conflicting only as to the area of the property. The defendant sent the notice of increase to the plaintiffs in January, 1994, yet the report of the defendant's appraiser (defendant's Exhibit 8) dated May 26, 1994, five months later, recites that the plaintiffs' property "consists of a parcel of land containing 15.8 acres." Also, in his letter dated July 5, 1995, transmitting the report to counsel for the defendant, the appraiser for the defendant writes, "I have compiled this appraisal report [about the plaintiffs' property] consisting of a parcel of land containing 15.8 acres." In both the report and testimony of the appraiser for the defendant, he referred to calculations based on an area of 15.8 acres.
Further, under subparagraph (b) of sec. 12-62, "In conducting a revaluation . . ., the assessor shall be required to view by physical observation all real estate in the municipality . . ." Even if "to view" does not include determining area, the assessor in 1991 could not perform his statutory duty of revaluation without determining the area of the plaintiffs' property, because of the relationship between size and value. Yet, in performing the specific statutory duty to make a revaluation in 1991, he determined the area to be 15.8 acres. No one testified to the reason for the difference between the 1991 and 1993 area-determination other than by referring generally to maps; no one testified concerning the scale or accuracy of the maps. No one explained, either, why an area determination in 1991 was used in 1991 and 1992, and was not considered erroneous until 1993. The CT Page 12554-G court deems it unnecessary to resolve the conflict, however, because, as noted previously, the parcel that was assessed in 1993 is the identical parcel assessed in 1991. The statute mandates that the identical assessment be used.
 III
In their briefs, both parties refer to the provisions of General Statutes sec. 12-117a conferring broad equitable powers on the court. Those powers may not be exercised, however, in cases where a claim of overvaluation is made. "This court declared in Norwich I that relief from an illegal or excessive assessment is obtainable only (1) by appeal to the board of tax review and then by a further appeal within two months, to the Superior Court pursuant to sec. 12-111 and 12-118 or (2) by an action in court pursuant to sec. 12-119 within one year from the last valuation date." Norwich v. Lebanon, 200 Conn. 697, 707,513 A.2d 77 (1986) "Resort to equity may be had only where legal relief is unavailable or inadequate."Id. at 711.
 IV
At the hearing, both parties introduced evidence concerning the fees of their appraisers. Anticipating that a' claim may be made for an award of those fees as costs under General Statutes sec. 52-260 (f), the court renders the following opinion concerning that claim.
That statute provides that when a real estate appraiser is "summoned" to give expert testimony, the court shall determine a reasonable fee to be paid to the appraiser, to be taxed as costs in lieu of other witness fees. In our statutes, the verb "summon" does not mean to ask or request to attend or appear, but to command to attend or appear, usually at a legislative or judicial proceeding. More than a hundred years ago, our Supreme Court recognized the duty of citizens to testify "when legally required to do so." In re Clayton, 59 Conn. 510, 521, 21 A. 1005 (1890). The procedure for "summoning" a witness is usually to serve him with a subpoena or a capias. See General Statutes, sec. 52-155
(b). ("Any person summoned as a witness" refers to witness whose appearance has been compelled by a subpoena or capias.) See also General Statutes sec. 2-46 (power in legislature to compel attendance of witnesses by subpoena or capias and to punish any non-appearing person "summoned as a witness"); sec. 54-82i
("summons" means a subpoena, order, or other notice requiring the CT Page 12554-H appearance of a witness); sec. 52-143 (subpoena shall be served not less than eighteen hours prior to time designated "for the person summoned to appear"; any subpoena "summoning a police officer as a witness"; subpoenas for witnesses "summoned by the state"; "if any person summoned by the state . . . by a subpoena"). That the verb "summon" has acquired "a peculiar and appropriate meaning in the law" (General Statutes sec. 1-1 ) is evidenced by one of the definitions of "summon" in Webster's New International Dictionary, Second Edition: "Law. To command by service of a summons or equivalent statutory notice to appear in court."
This court does not know at this point whether a claim will be made that an appraiser was "summoned" within the meaning of that word in General Statutes sec. 52-260 (f). Although a court of equity has broad power with respect to costs, this court is of the opinion that that power should be exercised with a view to the maxim of equity that "equity follows the law." In recognition of that maxim, "Equity courts cannot disregard, or in effect repeal, statutory and constitutional requirements and provisions." 27 Am.Jur.2d 630. In sum, whether the court may award a fee for the appraiser will depend on whether the appraiser was "summoned" within the meaning of that word in General Statutes sec. 52-260 (f) and whether the party claiming the award is entitled to costs under the provisions of the general statutes determining whether the party claiming costs is entitled to them.
 V
Judgment may enter sustaining the appeal. Judgment may further enter that, for purposes of taxation by the Town of Tolland, the valuation of the property of the plaintiffs on the list of October 1, 1993, is the same as the valuation of the property of the plaintiffs on the list of October 1, 1991, i.e. $452,400, and that the assessment of the property of the plaintiffs on the list of October 1, 1993, is the same as the assessment of the property of the plaintiffs on the list of October 1, 1991, i.e. $316,680.
Rubinow, State Trial Referee