[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is a municipal tax appeal in which the plaintiff's challenge the right of the assessor to make an interim change in the assessment of their property based upon the assessor's claim that he had previously misclassified the plaintiffs' property as "excess acreage" when it should have been "commercial land."
The parties have stipulated to the following facts: On October 1, 1996, the plaintiff's were the owners of mobile home parks at 15 Meeting House Lane, 55 Chesterfield Road, 75 Chesterfield Road and Chesterfield Road. On the October 1, 1991 revaluation date, the assessor set the assessment of 15 Meeting House Lane at $45,890. By notice dated February 23, 1996 for the assessment year of 1995, the assessor increased the assessment of 15 Meeting House Lane to $129,010. On the October 1, 1991 revaluation date, the assessor set the assessment of 55 Chesterfield Road at $102,340. By notice dated February 23, 1996 for the assessment year of 1995, the assessor reduced the assessment of 55 Chesterfield Road to CT Page 12629 $99,750. By notice dated February 23, 1996 for the assessment yea; of 1995, the assessor set the an assessment of $23,630 on the property at Chesterfield Road, which had no prior assessment. The plaintiff's have withdrawn their appeal as to 75 Chesterfield Road. The plaintiff's appeal the assessment of the three remaining properties listed above on the October 1, 1996 grand list and subsequent grand lists.
At the last town wide revaluation on October 1, 1991, the assessor had classified and assessed the plaintiffs' properties as "excess acreage." On March 4, 1996, the assessor mailed a notice to all mobile park owners, including the plaintiff's, explaining the February 23, 1996 notices of increases in their property assessments due to "[a] correction of a clerical error in the land valuation used for mobile home parks." (See Exhibit A, attached to Stipulation of Facts.) In the letter, the assessor explained that mobile home park lands were classified as "excess acreage" on October 1, 1991, when they were commercial lands generating an income and should have been classified as "commercial land."
The town argues that § 12-55 and § 12-60 provide the authorization for the assessor to correct an error in the classification of the plaintiffs' property between decennial revaluations. The town claims that the assessor was within his rights to correct a clerical error pursuant to General Statutes § 12-60, which provides in part: "Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date." The town further claims that General Statutes § 12-55 authorizes the assessor to make a mid-term revaluation of properties. Section 12-55 recites: "When the lists of any town have been so received or made by the assessor or board of assessors, they shall equalize the same, if necessary, and make any assessment omitted by mistake or required by law. The assessor or board of assessors may increase or decrease the valuation of property as named in any of such lists." The town relies on 84 Century LimitedPartnership v. Rocky Hill, 207 Conn. 250, 541 A.2d 478 (1988) to support the assessor's action.[1]
The court in 84 Century Limited Partnership construed § 12-55 to contain three operative phrases: "(1) When the lists of any town have been so received or made by the assessors, they shall equalize the same, if necessary; (2) make any assessment omitted by mistake or required bylaw, and (3) the assessors may increase or decrease the valuation ofproperty as named in any such lists or in the last preceding grand list." (Emphasis in original; internal quotation marks omitted.) 84 CenturyLimited Partnership v. Rocky Hill, supra, 207 Conn. 262. The court in 84Century Limited Partnership stated: "It is a clear legislative mandate to grant to local assessors a continuing duty unrelated to decennial CT Page 12630 revaluations, to achieve administratively a fair and equal assessment for all taxpayers. The power to equalize the lists, if necessary, imports a watchtower role for the assessor to correct inequalities, whether too high or too low. The "if necessary' language clearly comprehends interim changes in assessments for there is no such requirement in § 12-62
which mandates decennial revaluations. The latter have obviously been legislatively deemed necessary." Id.
The plaintiff's contend that the authorization for the assessor to correct clerical errors or mistakes pursuant to § 12-60 does not include errors based on substance and judgment, such as the case here. In support of this argument, the plaintiff's cite Reconstruction FinanceCorp. v. Naugatuck, 136 Conn. 29, 68 A.2d 161 (1949), in which the court held that clerical errors do not include errors of substance, judgment or law. Id., 32.
The plaintiff's do not contest the assessor's determination that mobile home park lands should be valued as "commercial property," not "excess land." According to the plaintiff's, the assessor's error in the classification of their mobile home park lands on October 1, 1991, should enure to their benefit and cannot be corrected until the next decennial revaluation.
Although the court in Reconstruction Finance Corp. v. Naugatuck, supra, 136 Conn. 29, held that clerical omissions or mistakes did not mean errors of substance, judgment or law, the court in 84 CenturyLimited Partnership v. Rocky Hill, supra, 207 Conn. 262, stated that § 12-55 was not restricted to changes omitted by mistake or required by law.
With these guidelines in mind, we examine the facts in this case. Exercising his watchtower role, the Montville assessor discovered in early 1996 that on October 1, 1991, the subject lands had been classified as "excess land" requiring a low valuation, when lands used as mobile home parks generating income should be correctly classified as commercial land. The assessor notified the mobile home park owners of this "mistake" and informed them that the valuation of the subject properties as shown on the grand list of October 1, 1991, the last revaluation year, would be changed to show the corrected market value of the properties for the 1995 assessment year. The assessor did not seek to recapture the difference in valuations between the 1991 list and the date of his corrections, but only increased the assessment for the October 1, 1996 grand list and subsequent grand lists.
Our analysis of these facts is that the assessor did what our statutes require him to do. When he discovered that property in town had been CT Page 12631 improperly classified, he was required to correct the inequalities of valuation so that the plaintiff's would bear their fair share of taxation on their properties. If the assessor had ignored the misclassification until the next town wide revaluation, he would not have equalized the assessments among the taxpayers in the town of Montville as required by General Statutes § 12-55. In the field of taxation, "it is the policy of the law to require all property, except such as is specially exempted, to bear its proportion of the public burdens." UnitedIlluminating Co. v. New Haven, 240 Conn. 422, 434, 692 A.2d 742 (1997).
We view the action of the assessor as one correcting a misclassification of a property assessment as of the revaluation year, not as an interim assessment. Cf. Rogan v. Bozrah, Superior Court, judicial district of New London at Norwich, Docket No. 105379 (January 24, 1995). We conclude that the assessor not only had the right to do this but he had the obligation, as an assessor, to make the correction once it became known to him. Accordingly, the plaintiffs' appeal is dismissed, without costs to either party.
Arnold W. Aronson
Judge Trial Referee