## FYBER PROPERTIES KILLINGWORTH LIMITED PARTNERSHIP *v.* DONNA SHANOFF ET AL.
### (14713)

CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued November 4, 1993—decision released February 8, 1994

*Christopher C. Vaugh,* with whom was *Joseph F. McKeon, Jr.,* for the appellant (plaintiff).

*Margery Weir Smith,* town attorney, for the appellees (defendants).

BORDEN, J. The question presented in this appeal is whether, in the circumstances of this case, a subdivision should properly have been assessed for purposes of municipal taxation as individual subdivision lots

rather than as unsubdivided land. The plaintiff, Fyber Properties Killingworth Limited Partnership, appeals[1] from the judgment of the trial court dismissing its appeal from the assessment of property value by the named defendant, Donna Shanoff (defendant), the tax assessor for the town of Killingworth.[2] The plaintiff claims that the trial court improperly concluded that pursuant to General Statutes (Rev. to 1991) §§ 8-25 (a) and 8-26c,[3]

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] In addition to the named defendant, the town of Killingworth and Ruth Patrick, tax collector for the town of Killingworth, are also defendants.

[3] General Statutes (Rev. to 1991) § 8-25 provides in pertinent part: "SUBDIVISION OF LAND. (a) No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. Any person, firm or corporation making any subdivision of land without the approval of the commission shall be fined not more than five hundred dollars for each lot sold or offered for sale or so subdivided. Any plan for subdivision shall, upon approval, or when taken as approved by reason of the failure of the commission to act, be filed or recorded by the applicant in the office of the town clerk within ninety days of the date such plan is delivered to the applicant, but, if it is a plan for subdivision wholly or partially within a district, it shall be filed in the offices of both the district clerk and the town clerk, and any plan not so filed or recorded within the prescribed time shall become null and void, except that the commission may extend the time for such filing for two additional periods of ninety days and the plan shall remain valid until the expiration of such extended time. All such plans shall be delivered to the applicant for filing or recording promptly after the time for taking an appeal from the action of the commission has elapsed, and in the event of an appeal, promptly upon the termination of such appeal by dismissal, withdrawal or judgment in favor of the applicant. No such plan shall be recorded or filed by the town clerk or district clerk or other officer authorized to record or file plans until its approval has been endorsed thereon by the chairman or secretary of the commission, and the filing or recording of a subdivision plan without such approval shall be void. . . ."

This statute has since been amended. Rather than filing the plan within ninety days of delivery, the applicant must now file the plan within ninety days of the "expiration of the appeal period under section 8-8, or in the case of an appeal, within ninety days of the termination of such appeal by dismissal, withdrawal or judgment in favor of the applicant." Public Acts 1993, No. 93-29. This amendment, however, does not affect the current appeal.

General Statutes (Rev. to 1991) § 8-26c provides in pertinent part: "SUBDIVISION TO BE COMPLETED WITHIN FIVE YEARS OF APPROVAL OF PLAN.

its resubdivision[4] became effective and hence taxable as individual building lots after the date the subdivision was approved but before the date on which the subdivision plan was recorded. We affirm the judgment of the trial court.[5]

The facts are undisputed. The plaintiff owns real property in the town of Killingworth. On March 7, 1989, the Killingworth planning and zoning commission (commission) approved the plaintiff's application for the subdivision of the property, subject, however, to the condition that the plaintiff and the selectmen of the town of Killingworth sign an agreement stating the terms and specifications for the improvement of Reservoir Road. No appeals were taken from the commission's decision.[6] On May 16, 1989, the commission approved the signed agreement for the improvement of Reservoir Road. On August 17, 1989, after approval by the health director of the town, the commission delivered the approved map of the subdivision to the plain-

---

(a) Any person, firm or corporation making any subdivision of land, except as provided in section 8-26g, shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision; the commission's endorsement of approval on the plan shall state the date on which such five-year period expires. . . . "

This statute has also been amended in ways that do not affect the current appeal. See Public Acts 1993, No. 93-19, § 2.

[4] The plaintiff's property was approved as a resubdivision rather than as a subdivision, apparently because the plaintiff's application sought to effect a change in an existing subdivision known as Blueberry Hills Subdivision. The trial court and the parties, however, have treated the case as involving the approval of a subdivision, and we, therefore, refer to the property as a subdivision.

[5] The defendant raises, as an alternative ground of affirmance, the question of whether the tax assessor should have the discretion to determine facts, such as the existence of a subdivision, provided that the determination is consistent with local ordinances and state statutes. Because we affirm the judgment of the trial court, we do not reach this issue.

[6] General Statutes § 8-8 (b) provides in pertinent part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court . . . within fifteen days from the date that notice of the decision was published . . . ."

tiff. On November 13, 1989, within the ninety day time limit for filing specified by § 8-25 (a), the plaintiff filed the subdivision map with the town clerk. The annual tax assessment date of October 1 fell, however, between the date of approval of the subdivision and the date of filing of the approved plan.[7] Thereafter, the defendant assessed the plaintiff's property as a completed subdivision, subject to taxation as individual building lots as of October 1, 1989.

Pursuant to General Statutes § 12-119,[8] the plaintiff appealed from the defendant's assessment to the Superior Court, claiming that the assessment had been made in disregard of the relevant statutes.[9] Focusing on §§ 8-25 (a) and 8-26c, the trial court dismissed the appeal. At the time, § 8-25 (a) provided that a subdivision plan shall be filed with the town clerk within ninety days of delivery to the applicant of the approved plan. Section 8-26c provides that all work on the subdivision must be completed within five years of the date of

[7] General Statutes § 12-62a provides in pertinent part: "UNIFORM ASSESSMENT DATE AND RATE. . . . (a) Each municipality . . . shall establish a uniform assessment date of October first, commencing not later than October 1, 1978, for the assessment of all property other than motor vehicles . . . ."

[8] General Statutes § 12-119 provides in pertinent part: "REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated."

[9] The plaintiff's appeal originally included two issues: (1) whether the subdivision was complete for purposes of municipal taxation before the assessment date of October 1, 1989; and (2) whether the assessed value of the property was manifestly excessive. The parties agreed to bifurcate the issues for the appeal to the superior court. The trial court ruled against the plaintiff on the first issue and the plaintiff did not press the issue of valuation. Thus, the trial court was not required to decide whether the defendant's valuation of the property was correct. By not pressing the second issue, the plaintiff waived the right to challenge the defendant's valuation.

approval. The trial court reasoned that under these statutes, the subdivision had been approved in March, 1989, when the commission approved the plaintiff's subdivision application. The trial court further reasoned that in the absence of an appeal challenging the granting of the subdivision application, the approval remained valid until the end of the five year period specified in § 8-26c. To put it differently, the court reasoned that the filing of the subdivision plan within the ninety day period permitted by § 8-25 (a) was not a condition precedent to approval. In the court's view, the failure to file within ninety days was a condition subsequent to approval that, had it occurred, would have revoked the already existing approval. Hence, the trial court concluded that the defendant had acted lawfully in assessing the property as a completed subdivision as of October 1, 1989. This appeal followed.

The plaintiff contends that the trial court incorrectly focused on §§ 8-25 (a) and 8-26c, and that the decisive authority is § 3.3.3 of the Killingworth planning and zoning regulations (1988). This regulation, adopted pursuant to § 8-25,[10] provides that "[n]o work[11] proposed or required to carry out an approved subdivision plan shall be commenced until the Record Subdivision Map, endorsed by the Commission, has been filed in the office of the Town Clerk." The plaintiff argues that § 3.3.3 permitted no work to commence on the property until

[10] General Statutes § 8-25 provides in pertinent part: "SUBDIVISION OF LAND. (a) . . . . Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. . . ."

[11] In this regulation, "work" has the same meaning it has in General Statutes § 8-26c (b). Killingworth Subdivision Regs. (1988 Amend.) § 2. Section 8-26c (b) provides in pertinent part: " 'Work' for purposes of this section means all physical improvements required by the approved plan, other than the staking out of lots, and includes but is not limited to the construction of roads, storm drainage facilities and water and sewer lines, the setting aside of open space and recreation areas, installation of telephone and electric services, planting of trees or other landscaping, and installation of retaining walls or other structures."

the plan had been filed, and that other Killingworth sub-division regulations prevented the property from being marketed as a subdivision until certain work had been completed. In particular, § 3.3.2[12] provides that sub-division lots cannot be occupied until subdivision roads have been built, and § 3.3.4[13] provides that lots cannot be sold until open space has been dedicated. Thus, the plaintiff contends that the property could not have been put to any greater or enhanced use until the plan had been filed, and that the defendant therefore illegally assessed the property as individual subdivision lots prior to the date the plaintiff filed the plan. We dis-agree.

In reaching this decision, we confine ourselves to the facts of this case. We do not decide the date upon which a property becomes taxable as a subdivision if the approval has been appealed, or if conditions imposed upon an approval have not been fully satisfied before the assessment date. Furthermore, we do not reach the question of the defendant's valuation of the plaintiff's property. See footnote 9.

---

[12] Section 3.3.2 of the Killingworth subdivision regulations (1988) provides: "OCCUPANCY OF LOTS OR PARTS. No building upon any lot or part of a tract or parcel of land constituting the area of an approved subdivision plan shall be occupied, and no Certificate of Occupancy shall be issued therefor, unless such lot or part has frontage of at least one hundred fifty (150) feet upon, or, in the case of interior lots, an owned way or easement of access at least twenty five (25) feet in width to, either: (a) a public road or (b) a subdivision road for which all work has been performed, completed and given preliminary approval pursuant to Section 8 of these Regulations."

[13] Section 3.3.4 of the Killingworth subdivision regulations (1988) provides: "OPEN SPACE DEDICATION. No lot or part of a tract or parcel of land constituting the area of an approved subdivision shall be sold, or offered for sale, or used, or offered for use, for building development until all pro-posed or required areas therein for open space purposes have been fully dedicated by a method prescribed in Section 7.7 of these Regulations."

Section 7.7 of the Killingworth subdivision regulations (1988) provides that any subdivision exceeding twenty acres shall dedicate no less than 15 percent of the subdivision area to open space. The subdivision in this case exceeds twenty acres.

Neither the relevant statutes nor prior case law defines exactly when a subdivision becomes effective for purposes of municipal taxation. We therefore write on a clean slate. Furthermore, the trial court's determination of the date upon which the plaintiff's property became taxable as a subdivision is a legal conclusion that we review de novo. *Red Maple Properties* v. *Zoning Commission*, 222 Conn. 730, 740, 610 A.2d 1238 (1992).

In reviewing a statute, our objective is to discern and effectuate the legislature's apparent intent. *State* v. *Blasko*, 202 Conn. 541, 553, 522 A.2d 753 (1987). We look first to the language of the statute; *Rhodes* v. *Hartford*, 201 Conn. 89, 93, 513 A.2d 124 (1986); which must be read in the context of the underlying statutory scheme. *Danbury* v. *International Assn. of Firefighters, Local 801,* 221 Conn. 244, 250, 603 A.2d 393 (1992).

In this case, the language of § 8-25 (a), the primary statute regulating the subdivision of land, repeatedly refers to the date of approval rather than the date of recordation. The statute begins with the simple mandate that "[n]o subdivision of land shall be made until a plan for such subdivision has been approved by the commission." To underscore this condition, the statute then provides penalties for subdividing land without the approval of the commission. Moreover, the filing requirement only arises "upon approval." Thus, the filing requirement is more of a mechanism for registering the approval than an independent, substantive provision.[14]

---

[14] By amending General Statutes § 8-25 (a) in 1993; see footnote 3; the legislature intended to link the date of filing more closely to the date of approval. In the hearings on the proposed amendment, John Pagini, director of planning and community development for the town of Enfield, stated: "A flaw in the current statutes results in no definitive linkage between the subdivision approval date and the filing of subdivision plans. Consequently, the filing of maps might occur at any time during an indefinite

Furthermore, the time limitation statute, § 8-26c, measures time from the date of approval rather than from the date of filing. Under § 8-26c, the subdivision approval expires if the subdivision is not complete within five years from the date of approval. The legislature has thus indicated that in the subdivision of property, the focal point is the date of approval.

Our conclusion in this regard is reinforced by *Stratford Arms Co.* v. *Stratford,* 7 Conn. App. 496, 508 A.2d 842 (1986). Although *Stratford Arms Co.* appears on its face to suggest that the plaintiff's property could not have been assessed as a subdivision until after filing, an analysis of the case's statutory setting leads to the opposite conclusion. In *Stratford Arms Co.,* the local tax assessor had assessed a property as a condominium rather than an apartment building as of the uniform assessment date of October 1, 1981, in anticipation of the property's impending conversion from an apartment building into a condominium. The property owner filed the declaration of condominium on January 7, 1982. The property owner then appealed from the assessment pursuant to § 12-119. The trial court dismissed the property owner's appeal, and the Appellate Court reversed. The Appellate Court reasoned that the true and actual value of the property as of October 1, 1981, was as an apartment building and thus it was improper to assess the property as a condominium.

The property in *Stratford Arms Co.,* however, was a condominium not a subdivision, and thus it was regulated by the Condominium Act.[15] General Statutes

period following approval, and has resulted in a lack of consistency in the way that municipalities enforce the provision." Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 1, 1993 Sess., p. 312. This statement further indicates that the legislature intended the statutory scheme to focus on the date of approval.

[15] Chapter 825 of the General Statutes, §§ 47-68a through 47-90c, entitled the "Condominium Act," governs condominiums created prior to January 1, 1984. See General Statutes §§ 47-214 and 47-90c.

§ 47-71 (a) provides that the owner of a property "may submit such property to the provisions of this chapter by filing or recording on the land records of the municipality . . . in which the property is located condominium instruments that comply with the provisions of this chapter." Section § 47-71 (b) provides that "[t]he declaration and all condominium instruments . . . *shall not be of legal effect until filed or recorded* on the land records of the municipality . . . ." (Emphasis added.) Thus, in the condominium statute, the legislature has clearly stated that the declaration of condominium does not take effect until it is filed. For this reason, the Appellate Court in *Stratford Arms Co.* concluded that the property could not be assessed as a condominium until after filing.

The subdivision statute, to the contrary, states that "any plan not . . . filed or recorded within the prescribed time shall become null and void . . . ." General Statutes § 8-25 (a). This provision signifies a different kind of statutory scheme, because in order for a subdivision plan to become null and void, it must previously have existed. Thus, the condominium assessment in *Stratford Arms Co.* is unlike the subdivision assessment in the current case. Had the legislature intended the subdivision approval not to take effect until filing, it could have phrased the subdivision statute as it phrased the condominium statute. As the trial court correctly concluded, timely filing of the subdivision map was not a condition precedent to approval, but a condition subsequent which, if it had not been satisfied, would have nullified the previously existing approval.

The trial court's conclusion also makes economic sense. By the assessment date of October 1, 1989, the plaintiff's property had increased in value. By that time, the commission had granted its approval and the fifteen day deadline for appealing the approval had passed. See

footnote 6. The plaintiff needed only to record the map in order to complete the process. Although the question of valuation is not before us in this appeal, it is safe to conclude that as of October 1, 1989, a potential buyer would have been willing to pay more for property that had been approved for subdivision and lacked only the recording of its approved plan, than for a parcel of raw, unsubdivided land.

Indeed, the plaintiff's proposed construction of the applicable statutes would permit a property owner to delay the filing of an approved plan until after October 1, solely in order to avoid an increased tax assessment for the following year. We decline to interpret the statutes in a manner that would permit a property owner to circumvent the legislative intent of both the recordation requirement of § 8-25 and the uniform assessment date of General Statutes § 12-62a.

Moreover, contrary to the suggestion of the plaintiff, the fact that a property owner may elect to discontinue the subdivision project within the ninety day filing period does not affect this result. Under § 8-25 (a), failure to file an approved plan for a subdivision within ninety days of approval causes the plan to become null and void—that is, the approval ceases to have any legal effect whatsoever. See *Caldwell* v. *Meskill,* 164 Conn. 299, 316, 320 A.2d 788 (1973). Had the plaintiff in this case, after having had the property assessed as a subdivision, encountered difficulties that prevented timely filing, the approval would have been nullified. Nullification would have created the same situation that would have existed had the subdivision never been approved, and would have thereby prevented the defendant from properly assessing the property as a subdivision as of October 1, 1989. In this case, however, the plaintiff avoided nullification by having filed the approved plan within ninety days.

Addressing the plaintiff's request to read § 8-25 in light of § 3.3.3 of the Killingworth subdivision regulations, we note at the outset that municipal regulations provide limited guidance for the interpretation of state statutes. Although the legislature authorizes municipalities to enact regulations in certain circumstances; *Smith* v. *Zoning Board of Appeals,* 227 Conn. 71, 81, 629 A.2d 1089 (1993); the authority flows from the legislature to the municipality, not vice versa. Thus, local regulations must be consistent with statutes, but we are not obligated to read statutes so as to be consistent with local regulations. Furthermore, the municipal regulations in this case pertain only to local zoning and planning. They are not part of a comprehensive statewide scheme that incorporates provisions concerning taxation. The legislature is entitled to a presumption that it intends to create a consistent body of law; *Department of Administrative Services* v. *Employees' Review Board,* 226 Conn. 670, 680, 628 A.2d 957 (1993); a municipality, however, is entitled to no such presumption regarding the consistency between regulations and statutes. Thus, the plaintiff's request to interpret the defendant's taxing authority in light of § 3.3.3 is unpersuasive.

Even if we were to look to the municipal regulation for guidance, the plaintiff's argument proves too much. Under that argument, many events in the development of a subdivision could plausibly establish it as complete for purposes of taxation. The plaintiff contends that, because § 3.3.3 permitted no work to commence on the property until the plan was filed, but other Killingworth regulations prevented the property from being marketed as a subdivision until certain work had been completed, the property could not have been assessed as a subdivision until after filing. The plaintiff also contends that in addition to the filing requirement of § 8-25, the Killingworth regulations pertaining to sub-

division roads; see footnote 12; and open space; see footnote 13; prevented the property from increasing in value until after filing. By the plaintiff's logic, any one of these events—filing, completion of roads or dedication of open space—could be the necessary event before which the property could not legally have been assessed as a subdivision. The plaintiff has not persuaded us why, if we are to start down the path it recommends, we should conclude that the date of filing is the decisive moment.

The judgment is affirmed.

In this opinion the other justices concurred.