[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
This is an action brought under General Statutes 12-119. The plaintiffs have appealed the revaluation and reassessment of their property in Weston by the defendant Tax Assessor of the Town of Weston, Linda Roig, on the Grand List of October 1, 1991.
The initial defendant was the Tax Assessor, Linda Roig. During the pendency of the action, the plaintiffs were given permission to and did cite in and join the Town of Weston as a defendant. The Town of Weston has raised the issue of failure to comply with the 12-119 one year statutory limitation on actions by way of a special defense. The plaintiffs have replied by denial and the pleadings are closed.
The facts do not appear in dispute. The plaintiffs owned three contiguous parcels of land off Newtown Turnpike in Weston CT Page 4194 consisting of approximately 82 acres. The plaintiffs applied to the Weston Planning and Zoning Commission for a subdivision of these parcels into 29 lots, with roads and dedicated open space. The application was approved by the Commission, subject to some 23 conditions. The approval was granted on July 22, 1991.
After the approval of the subdivision, the defendant Assessor undertook to revalue and reassess the property as 29 separate building lots for the purpose of calculating and levying municipal real property taxes for the Grand List of October 1, 1991. It is this revaluation and reassessment which the plaintiffs claim was "inappropriate, unwarranted, illegal, improper, manifestly excessive and was accomplished in disregard of applicable law and statutory provisions. . ."
The approved subdivision plan, known as "Byebrook", calls for these 82 acres to be split into 29 building lots, together with roadways and some additional open space, with construction to proceed in two phases. Phase I involves lots 1 through 7, and Phase II involves lots 8 through 29. This action applies only to the lots in Phase II, consisting of approximately 49.371 acres. The plaintiffs' amended complaint contests the tax assessments applied to the lots within Phase II. The plaintiffs complaint does not address the assessments applied to the Phase I lots.
As to the subdivision approval of Phase II, the plaintiffs complain and the evidence indicates that the approval was subject to conditions and restrictions, including the following quoted from the notice of approval:
 3. Detailed engineering design and construction plans for proposed bridge over Saugatuck River on "Michael's Way" (Sta. 1+10 to 2+50) shall be completed to meet appropriate local, state and federal regulations, and the plans shall be approved in advance by the Town's designated engineer prior to the commencement of construction.
. . .
 5. Fill sections along "Michael's Way" (Sta. 5+50 to 8+50) shall be constructed and allowed to preconsolidate for a sufficient period of time but no less than one (1) year prior to finish road grading and installation of drainage and utility systems. CT Page 4195
 6. . . PHASE II shall include all the work necessary to meet subdivision approval for all of Michael's Way, for the extension of Old Orchard Drive to the "T" intersection Michael's Way, for Hills End from its intersection with Michael's Way to its turnaround, and for the off-site work at the Old Orchard Drive turnaround. PHASE II shall include Lots 8 through 29. No driveway or building permits except for facilities designated to provide temporary/permanent fire protection, shall be issued for these lots until (a) all work required to rough out and establish a passable base for fire and other emergency vehicles has been completed from Newtown Turnpike to the existing Old Orchard Drive; (b) construction of the bridge has been completed to meet all required specifications; and (c) the first course of asphalt has been rolled to the lot's driveway location. . .
 10. In addition to the prerequisites in Condition 6, prior to issuance of driveway and/or building permits:
 a. Vacant Lots 1 through 6, 9 through 26, and 28 shall require a site specific/Lot Development Plan approved by this Commission and the posting of a Lot Development bond in an amount approved by this Commission, and Vacant Lots 1, 2, 9, 11, 12 and 13 shall also require Flood Plain Management review by this Commission.
 b. Lots 7, 8, and 27, which contain existing buildings, shall require approval by this Commission, as well as Flood Plain Management review for any new construction, reconstruction or demolition, except the building on Lot 7 may be enlarged by not more than 100 square feet provided such construction shall not be in the flood plain.
 c. Vacant Lots 4, 5, 6 and 29, which have received Floor Zone Development Permits, shall receive Flood Development approval by this Commission for any changes in the site specific/Lot Development Plans which were approved. . . .
 17. . . . Prior to any work commencing on PHASE II a performance bond in an amount recommended by the Town's designated engineer, after consultation with the CT Page 4196 applicant, and approved by this Commission shall be posted. No lots in PHASE II (with the exception of Lot 8) shall be conveyed by the subdivider until the bond for PHASE II has been approved by this Commission and posted.
The amount of the performance bond required for the Phase II project has been fixed at $1,020,451.52.
The parties agree that there is no factual dispute and each has moved for summary judgment. The defendants motion is based on the claims (1) that the plaintiffs failed to bring the action against the defendant Town of Weston, within one year from the date of the assessment as required by General Statutes 12-119, (2) as a matter of law, the tax assessments in issue are not "manifestly excessive" and, in the absence of misfeasance or nonfeasance must be upheld; and (3) the plaintiffs have failed to state a claim upon which relief can be granted as to the defendant tax assessor.
The plaintiffs have moved for summary judgment claiming (1) that the imposition of conditions and restrictions by the commission and the performance bond requirements do not give rise to a change in the condition of the land or to any change of circumstances which would warrant the interim revaluation undertaken by the assessor; (2) that the defendant town is estopped from raising by way of special defense the 12-119 one year limitation on actions and (3) that the amended complaint joining the Town relates back to the original complaint which was served within the one year limitation of 12-119, since it alleges the same cause of action.
 I.
Because this is an appeal under the provisions of General Statutes 12-119, this cannot be considered a contest claiming merely overvaluation. Rather, the procedure under 12-119 is to appeal from what is claimed to be an "illegal" tax. See Tucker v. Hartford, 15 Conn. App. 513, 517, 545 A.2d 854, cert. denied209 Conn. 807, 548 A.2d 444 (1988); Faith Center, Inc. v. Hartford,192 Conn. 434, 472 A.2d 16, 17, cert. denied 469 U.S. 1018,105 S.Ct. 32, 83 L.Ed.2d 359 (1984).
As the defendants correctly note, claims under C.G.S.12-119 must fall into one of two categories: (a) the absolute nontaxability of the property in the municipality where it is CT Page 4197 situated; or (b) a manifest and flagrant disregard for statutory provisions. Second Stone Ridge Co-op Corp. v. City of Bridgeport, 220 Conn. 335, 597 A.2d 326, 328 (1991). In this case, the plaintiffs are not making a claim under the first category. The plaintiffs concede the property is taxable, but they want the assessment returned to the 1990 levels, at least to the lots in Phase II.
Under the second category of attack encompassed by 12-119, the plaintiffs here must establish either "there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on their part." Mead v. Greenwich, 131 Conn. 273,275, 38 A.2d 795 (1944); Second Stone Ridge Co-op. Corp.,597 A.2d at 329. In order to prevail under 12-119 the plaintiffs must establish that the action of the Assessor would result in illegality. Id.
 II.
The thrust of the plaintiffs' argument is that despite the fact that the approval of the plaintiffs' application to subdivide the subject property is conditioned upon the satisfaction of the cited conditions and despite the fact that the performance bond, required as a precondition to commencement of work in Phase II and/or conveyance of the lots pursuant to paragraph 17 of the subdivision approval, has been fixed at $1,020,451.52, the defendants undertook to revalue and reassess the subject property as individual lots.
The plaintiffs claim that the conditional approval of their application to subdivide has in no way changed the nature or physical make-up of the property. They argue that the application was not approved outright; it was approved subject to exacting and costly conditions. It is their position that until these conditions are met, the property remains in exactly the same condition as it was when it was initially valued and assessed prior to the submission of the application and the revaluation and reassessment carried out by the defendants directly contravenes the limited statutory authority of the tax assessor to revalue and reassess property on an interim basis.
The plaintiffs note that General Statutes 12-62 provides for mandatory revaluation of property every ten years following the effective date of the last preceding revaluation. The CT Page 4198 plaintiffs claim the general rule prohibits interim property revaluations, that is, property revaluations made by the Assessor other than during the decennial revaluation required by C.G.S12-62. They note that General Statutes 12-62 has consistently been interpreted by Connecticut courts to preclude interim revaluations of real property. Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 438 A.2d 782 (1981). The Plaintiffs quote from Ralston Purina Co. v. Franklin Board of Tax Review,203 Conn. 425, 525 A.2d 91 (1987), in which the court rejected an argument that 12-62 gave a defendant board the authority to revalue property, stating:
 On the present record, we are not persuaded of the need to reexamine our interpretation of Sec. 12-62 as mandating general revaluations of real property only once every decade . . . we presume that the legislature is aware of our interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation. . . Since the legislature has not amended Sec. 12-62 . . . we can discern no reason now to amend that statute judicially so as to alter the apparent intent of its drafters to preclude, as a general rule, interim revaluations of real property.
The plaintiffs concede that the general rule articulated by the Supreme Court in Uniroyal and Ralston was made subject to several exceptions in 84 Century Limited Partnership v. Rocky Hill Board of Tax Review, 207 Conn. 250, 541 A.2d 478 (1988). In 84 Century, the court held that under the appropriate circumstances, "such as the destruction or expansion of a substantial change in its use or zoning classification, or, a decision by the taxpayer to go out of business," an interim, revaluation of property is permissible.
But, the plaintiffs urge that in this case, no change in circumstances exists to justify the interim revaluation carried out by the defendants. They maintain that the conditional subdivision approval is an entirely insufficient circumstance by which to base a revaluation. The mere fact that the Weston Planning and Zoning Commission conditionally approved the plaintiffs' subdivision application does not entitle the defendants to revalue the property. CT Page 4199
 III.
The defendants do not disagree that the three major cases on this issue are Uniroyal, Inc. v. Middlebury Board of Tax Review, Ralston Purina Company v. Franklin Board of Tax Review, and 84 Century Limited Partnership v. Rocky Hill Board of Tax Review.
The defendants agree that in the Uniroyal case (known as Uniroyal II), the court determined, inter alia, that a town need only revalue properties once each decade. See 438 A.2d at 782. The defendants also agree that in the Ralston Purina case, the court determined that property owners are not entitled to interim adjustments on their assessments, to account for fluctuations in property values resulting solely from changes in market conditions, and that interim adjustments were prohibited except under special circumstances. See 525 A.2d at 98 and 99. The defendants of course, concur that while the decision in Ralston Purina would prohibit interim valuations based on mere market fluctuations, the Connecticut Supreme Court in 84 Century Limited Partnership concluded that the Assessors in Rocky Hill could do a revaluation where "a sale of the property in question showed that the property had greatly increased in value in relation to other properties in the Town." 541 A.2d at 484.
The defendants argue that, in reaching this conclusion, the Supreme Court broadly interpreted the Assessor's powers. The Court specifically referred to C.G.S. 12-55, "Lists; notice of increase; public inspections; abstracts," and its three important phrases: "(1) When the lists of any town have been so received or made by the Assessors they shall equalize the same if necessary; (2) Make any assessment omitted by mistake or required by law, and (3) The Assessors may increase or decrease the valuation of property as named in any such lists or in the last preceding grand list. . . ." 541 A.2d at 484. The court further noted that this "is a clear legislative mandate to grant to local Assessors a continuing duty unrelated to decennial revaluations, to achieve administratively a fair and equal assessment for all taxpayers." Id.
The Supreme Court has stated that the language in C.G.S12-55 provides for "a permissive valuation of property in the years "between the decennial revaluations, without requiring it." Stop and Shop Companies, Inc. v. East Haven, 210 Conn. 233,554 A.2d 1055, 1060 (1989). The defendants claim that both prior case law and the specific facts of this case support the Assessor's decision to separately assess each of the 29 lots within the Byebrook subdivision. CT Page 4200
General Statutes 12-42 provides that Assessors, in preparing lists of properties subject to taxation within the town, must make a separate description and assessment of each parcel of real estate. The defendants assert that this statute has been construed as a requirement imposed by the legislature so that more accurate valuations may be reached than if tracts of land were lumped into a single item. See State v. Erickson,104 Conn. 542, 547, 133 A. 683 (1926). If Assessors fail to list real estate in separate parcels, they may be compelled to do so by mandamus. Empire Estates, Inc. v. Stamford, 147 Conn. 262, 265,159 A.2d 812 (1960).
The defendants assert that once a new lot is created or split off from another parcel, its subsequent valuation and assessment is an original valuation and assessment and has no relation to the old lot. See 147 Conn. 265. A split lot is a new unit of real estate requiring a separate valuation. Id. at 265-266. The defendants therefore claim that where a change has occurred in the composition of a parcel of real estate, a separate valuation and assessment becomes obligatory for each new parcel. See Id. at 266.
The defendants argue that the plaintiffs chose to subdivide their property and did not appeal the zoning conditions that they now claim are onerous. Because, the plaintiffs chose to sign the subdivision maps and caused them to be recorded on the Weston Land Records, then pursuant to C.G.S. 12-42 and 12-55, the defendant Assessor, Linda Roig, had a statutory duty to determine whether the plaintiffs' conduct created separate parcels of land, and she decided that it did. The subdivision of the property had the effect of converting the plaintiffs' 82 acres into 29 separate building lots, and building lots are clearly taxable pursuant to 12-64 at a uniform percentage of its "present true and actual valuation." As such, a separate valuation and assessment became obligatory. See Empire Estates, Inc. v. Stamford, 147 Conn. at 266.
 IV.
The Assessor has presented an affidavit in which she asserts that she followed the standard and current assessment practices in the State of Connecticut in preparing new field cards for each of the 29 new lots after the plaintiffs recorded their subdivision maps. The plaintiffs have presented no evidence in CT Page 4201 contradiction of her testimony that she followed standard assessment practices in her valuation of these lots.
Rather, as indicated, the plaintiffs claim that the use and character of all lots within Phase II (Lots 8 through 29) have not changed, and cannot change until the conditions imposed by the Commission have been met. Therefore any reassessment is premature and illegal.
This court concludes that the issue has been resolved in the case of Fyber Properties Killingworth Limited Partnership v. Shanoff, 228 Conn. 476, A.2d (2/8/94). In that case, the question presented was when should a subdivision properly have been assessed for purposes of municipal taxation as individual subdivision lots rather than as unsubdivided land. The property owner claimed that the relevant date would have been the date on which the subdivision map was filed with the Town Clerk. The Supreme Court upheld the trial court's determination that property becomes taxable as a subdivision and amenable to revaluation upon the commission's approval of the application.
 "The trial court reasoned that under these statutes, the subdivision had been approved in March, 1989, when the commission approved the plaintiff's subdivision application. The trial court further reasoned that in the absence of an appeal challenging the granting of the subdivision application, the approval remained valid until the end of the five year period specified in 8-26c. To put it differently, the court reasoned that the filing of the subdivision plan within the ninety day period permitted by 8-25(a) was not a condition precedent to approval. In the court's view, the failure to file within ninety days was a condition subsequent to approval that had it occurred, would have revoked the existing approval. Hence, the trial court concluded that the defendant had acted lawfully in assessing the property as a completed subdivision as of October 1, 1989." Id. at 480
It is conceded that the Fyber Properties court did state: "In reaching this decision, we confine ourselves to the facts of this case. We do not decide the date upon which a property becomes taxable as a subdivision if the approval has been appealed, or if conditions imposed upon an approval have not been fully satisfied before the assessment date." Id., at 481. CT Page 4202
The plaintiffs have, of course, impliedly claimed that the conditions contained in the approval were conditions precedent to the approval.
In Fyber Properties a similar argument was advanced. The plaintiff contended that 3.3.3 of the Killingworth planning and zoning regulations (1988) provided that "[n]o work proposed or required to carry out an approved subdivision plan shall be commenced until the Record Subdivision Map, endorsed by the Commission, has been filed in the office of the Town Clerk." The plaintiff argued that 3.3.3. permitted no work to commence on the property until the plan had been filed, and that other Killingworth subdivision regulations prevented the property from being marketed as a subdivision until certain work had been completed. In particular, 3.3.2 provides that subdivision lots cannot be occupied until subdivision roads have been built, and 3.3.4 provides that lots cannot be sold until open space has been dedicated. The plaintiff therefore contended that the property could not have been put to any greater or enhanced use, at least until the plan had been filed, and that the assessor therefore illegally assessed the property as individual subdivision lots before the plan was filed. These claims did not persuade the Supreme Court that revaluation must be delayed until these conditions were met.
The court has examined the conditions imposed in the instant case. Generally, they involve details concerning bridge construction over a river, road construction and completion, lot development plans for certain specific lots with wetlands, permits for lots subject to flood plain zone management, and the posting of completion bonds. Such modifications and conditions, in this court's opinion, are authorized under General Statutes8-25, Subdivision of Land and General Statutes 8-26, Approval of Subdivision and Resubdivision Plans. The instant conditions, although clearly more detailed and more onerous, are of the same general character as the regulations in Fyber Properties, preventing the property from being marketed until certain work was done and conditions concerning the construction of roads were met. These conditions in no way affect the approval of the subdivision into 29 distinct lots or the approval of the road layout in the subdivision. The conditions cannot be characterized as conditions precedent to the approval which has been recorded.
These plaintiffs did nor appeal from the imposition of these CT Page 4203 conditions, but accepted them and filed the plans with the Town Clerk.
In Fyber Properties, the Supreme Court addressed similar claims to those being proposed by these plaintiffs:
 Even if we were to look to the municipal regulation for guidance the plaintiff's argument proves too much. Under that argument, many events in the development of a subdivision could plausibly establish it as complete for purposes of taxation. The plaintiff contends that, because 3.3.3 permitted no work to commence on the property until the plan was filed, but other Killingworth regulations prevented the property from being marketed as a subdivision until certain work had been completed, the property could not have been assessed as a subdivision until after filing. The plaintiff also contends that in addition to the filing requirement of 8-25, the Killingworth regulations pertaining to subdivision roads; . . . and open space; . . . prevented the property from increasing in value until after filing. By the plaintiff's logic, any one of these events — filing, completion of roads or dedication of open space — could be the necessary event before which the property could not legally have been assessed as a subdivision. The plaintiff has not persuaded us why, if we are to start down the path it recommends, we should conclude that the date of filing is the decisive moment.
Similarly, the present plaintiffs have not persuaded this court that the completion of any particular condition or any date later than the date of approval by the Commission should be the trigger which would permit lawful revaluation.
The court therefore concludes that the Assessor was authorized to revalue the property encompassed in Phase II as separate building lots upon approval of the subdivision application by the Commission, even though that approval required that certain conditions be met in the development and construction of the subdivision. The court also concludes that there was no evidence presented which would indicate that the method of evaluation followed by the Assessor was arbitrary or excessive or discriminatory.
Because the court finds that the plaintiffs have not established their claim under General Statutes 12-119 and finds CT Page 4204 that the revaluation of the building lots was lawful and the revaluation was not established to be arbitrary or excessive or discriminatory, there is no need to address the issue of the special defense raised by the defendants.
The defendants motion for summary judgment is granted on their claim that as a matter of law, the tax assessments in issue are not "manifestly excessive" and, in the absence of misfeasance or non-feasance must be upheld. The plaintiffs motion for summary judgment is denied.
Judgment may enter in favor of the defendants and against the plaintiffs on the amended complaint in accordance with this memorandum.
NIGRO, J.