[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED OCTOBER 27, 1994
These actions are appeals by the plaintiff from the decisions of the Assessor and the Board of Tax Review of the Town of Sterling (hereinafter "Town") declassifying certain land in the town previously classified as farmland on the list of October 1, 1990, and appealing decisions of the Town Board of Tax Review rejecting the applications for classification of a portion of the plaintiff's land as farmland on the lists of October 1, 1991, October 1, 1992 and October 1, 1993. The Sterling Fire District has been named in one of the actions because its assessments are taken from the grand list of the Town.
Procedurally, the first appeal alleges an excessive assessment on the grand list of October 1, 1990 and a failure to notify the plaintiff of a change of classification. The second appeal has two counts. The first is an appeal from the decision of the Board of Tax Review pursuant to § 12-117a C.G.S. refusing the plaintiff's request for a classification of his land as farm land on the grand list of October 1, 1991. The second count is an appeal pursuant to § 12-119 C.G.S. for wrongful assessment. A third and fourth count were then added to the second appeal based upon §§ 12-117a and12-119 respectively for the grand list of October 1, 1992. Finally, two additional counts with the same allegations were added on May 11, 1994 for the grand list of October 1, 1993.
There are therefore seven counts in all applying to four different grand lists from October 1, 1990 to October 1, 1993. The plaintiff seeks relief under § 12-107c(d) CT Page 10115-A which refers to the remedies available to the plaintiff under §§ 12-117a, 12-118, and 12-119 C.G.S.
The court finds the following facts:
In 1990, the plaintiff, who was engaged in farming, was the owner of a 38-acre parcel of land including a dwelling located on Ekonk Hill Road and Hell Hollow Road in the town. Of this parcel, 1.84 acres were assessed as a house lot and building and are not the subject of these appeals. The balance of the land, 36.16 acres, was assessed as farmland pursuant to P.A. 490 (now §§ 12-107a and 12-107c C.G.S.) by the Town. The assessment of the property on the grand list of October 1, 1989 was $2660.00.
In March of 1990, the plaintiff filed with the Town Clerk of the Town an approved subdivision of the 36.16-acre parcel consisting of eighteen building lots. At this time the assessor changed the classification of the land from farm land to building lots based on the filing of the subdivision map. The plaintiff did not file a new application for P.A. 490 status for the list of October 1, 1990 as required by § 12-107c(a). Notices of the new assessments were mailed in the ordinary course by the assessor on January 26, 1991, although the plaintiff denies receiving notice until he received tax bills for each of the building lots on July 1, 1991.
During the period October 1, 1990 through October 1, 1991, the plaintiff obtained building permits for three dwellings to be erected on three of the lots in his subdivision.
During August of 1991, the plaintiff filed a new application to classify 23.57 acres of his land as farmland pursuant to § 12-107d C.G.S. This was the same land included in his subdivision application. The assessor denied the application and the plaintiff appealed to the Board of Tax Review which rejected his appeal.
On October 27, 1992, the plaintiff filed another application to classify 15 acres within the subdivision as farmland and forest land. By this time seven lots CT Page 10115-B within the subdivision were used for residential purposes. He was again turned down by the assessor and the Board of Tax Review.
The plaintiff repeated this procedure in October of 1993 and his application was rejected by the assessor and his appeal was rejected by the Board of Tax Review. Another certificate of occupancy issued in December of 1992 for a residence, making a total of eight lots of the original eighteen-lot subdivision that have been built upon. It is undisputed that the plaintiff has used the land comprising the remaining lots for farm purposes, mainly the growing of corn, since he began these appeals.
The issues are (1) whether the Town in 1990 properly reclassified the premises and properly gave notice to the plaintiff of its decision to classify the premises as a subdivision and (2) whether, on these facts, the Town, acting by its assessor and Board of Tax Review, properly continued to classify the premises as a subdivision in the three succeeding tax years.
At the hearing of May 10, 1994, Ms. Penny Keith, the Town assessor since October of 1990, testified that in January of 1991 she sent out fifty notices of increased assessment to property owners, including the plaintiff. She testified the increase in assessment for the plaintiff's property was because of an approved plan of a subdivision of eighteen lots that he filed in March of 1990. Of the fifty notices she sent, only one came back to her and it was not the notice sent to the plaintiff. She assumed the plaintiff received the notice because it was not returned to her. While she had no specific recollection of the notice sent to the plaintiff, she indicated she knew him and she knew where he resided. (In his testimony the plaintiff said he never received the notice of increased assessment.)
Ms. Keith, in mailing notice of the increased assessment to property owners, including the plaintiff, in January of 1991, was following the mandate of § 12-55
C.G.S. which obligates the assessor, within ten days of the signing of the grand list abstract, to mail notice of the assessment increase to the last-known address CT Page 10115-C of the person whose list or valuation is so changed. No other notice is required. Her testimony established, by a fair preponderance of the evidence, that she complied with the statute.
When the approved subdivision plan was filed in March of 1990, Ms. Keith testified that it was common procedure to file a certificate of separation apportioning the value of the land, depending upon the number of lots, until the next grand list, after which any newly created lot would take on its full value. Thus on October 1, 1990, pursuant to the provisions of § 12-62c
C.G.S. the assessor reclassified the 36.16 acres from farmland to eighteen building lots.
The plaintiff claims the mere filing of the subdivision map is not enough to change the classification. He claims that the statute says such a filing is not a "change" within the meaning of § 12-504h C.G.S. which says "[a]ny land which has been classified by the record owner as farmland . . . shall remain so classified without the filing of a new application . . . until either of the following occur: (1) the use of such land is changed to a use other than that described in the application or . . . (2) such land is sold . . .
The defendant, however, claims that the use of the plaintiff's land was changed by the "process of preparing, obtaining approval and recording a plan of subdivision for said property." (Defendant's Trial Brief, p. 11.) Therefore, the defendant claims that the plaintiff's land should be taxed as individual building lots at their full value. The defendant further argues that to allow the plaintiff to reap the benefits of farmland status, while at the same time keeping the subdivided land available for sale and subsequent construction thereon, would violate the legislative intent expressed in C.G.S. § 12-107a. (Defendant's Trial Brief, p. 12.)
As an appeal from the Board of Tax Review of the Town of Sterling, this court must perform two functions. First,
 [i]t must determine the judicial question whether the appellant has been aggrieved by such action on CT Page 10115-D the part of the board as will result in the payment of an unjust and, therefore, a practically illegal tax. Secondly, if that question is answered in the affirmative, the Court must proceed to exercise its broad discretionary power to grant relief.
Silbey v. Middlefield, 143 Conn. 100, 105 (1956). In order to determine whether the plaintiff was aggrieved by the Board of Tax Review of the Town of Sterling, this court held a trial de novo. See O'Brien v. Board ofTax Review of the Town of Groton, 169 Conn. 129, 131
(1975). The main purpose of the trial de novo is to determine the "true and actual value of the applicant's property." O'Brien, 169 Conn. at 131. In this case, the true and actual value of the plaintiff's land for taxation purposes depends upon the proper classification of his land.
This appeal turns on the issue of whether or not the plaintiff's actions in seeking and gaining approval for a subdivision of the land in question, filing that subdivision plan with the Town Clerk, and subsequently commencing construction upon and selling several subdivided lots, constituted a change in use so as to allow the assessor to terminate the classification of the land as farmland. If the plaintiff's actions constituted a change in use, the plaintiff was not aggrieved by the Board of Tax Review and therefore, can not be granted relief by this court.
Neither the applicable statutes nor prior Connecticut caselaw addresses the issue of the effect of an approved subdivision on land previously classified as farmland under C.G.S. § 12-107c. The Connecticut Supreme Court has, however, visited the issue of when a subdivision becomes effective for municipal taxation purposes, in Fyber Properties Killingworth LimitedProperties v. Shanoff, 228 Conn. 476 (1994). WhileFyber did not deal with the subdivision of land previously classified as farmland, the rule announced by the Court can be applied to this case. In Fyber, the plaintiff subdivided his property in the town of Killingworth. The subdivision was approved on March 7, 1989. Fyber, 228 Conn. at 478-79. The plaintiff objected to the assessor's assessment of his property CT Page 10115-E as individual building lots as of October 1, 1989, claiming that the subdivision was not effective until filing with the Town Clerk. Id. at 479. The Court disagreed, however, finding that the subdivision became effective on the date of its approval, not the date of its filing, for municipal taxation purposes. Id. According to Fyber, in the instant case the plaintiff's subdivision became effective on the date of its approval, before the March 1990 filing with the Town Clerk of Sterling and could, therefore, be taxed as individual lots.
The rule of Fyber is helpful in the instant case, but not dispositive of the outcome, because the applicable statutes relating to subdivisions, C.G.S. §§ 8-25(a) and8-26c, must be read in conjunction with the statutes relating to the classification of farmland for municipal taxation purposes, specifically C.G.S. §§ 12-107a, 12-107c, and 12-504h. C.G.S. § 12-504h defines only two situations when farmland classification of property should be terminated: a change in use from that described in the application, or sale of the land. The statute does not, however, define "use" or "change in use."
This court must, therefore, engage in statutory interpretation in order to "discern and effectuate the legislature's apparent intent" and arrive at a proper meaning of the words in question. Fyber,228 Conn. at 476, citing State v. Blasko, 202 Conn. 541, 553
(1987). This court will look to the statute's "legislative history, language, purpose and circumstances surrounding its enactment." Danbury v. International Associationof Firefighters, Local 801, 221 Conn. 244, 250
(1992) (quoting Winchester v. State Board of LaborRelations, 175 Conn. 349, 356 (1978)). This court must also read the farmland statutes "as a whole . . . [in order to] give effect and to harmonize all of [their] parts . . ." Danbury, 221 Conn. at 244, quoting UnitedIlluminating Co. v. Groppo, 220 Conn. 749, 759 (1992).
The legislature has expressly declared the policy behind the favorable tax treatment of farmland in C.G.S. § 12-107a. This section states, in pertinent part, CT Page 10115-F
 It is hereby declared (a) that it is in the public interest to encourage the preservation of farm land, forest land and open space land in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state, to conserve the state's natural resources and to provide for the welfare and happiness of the inhabitants of the state, (b) that it is in the public interest to prevent the forced conversion of farm land, forest land and open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with the preservation as such farm land, forest land and open space land . . .
Connecticut General Statutes § 12-107a. The Connecticut Supreme Court has found that in utilizing this language "the legislature contemplated more than the mere creation of tax advantages for producers of food products . . . Indeed, it would appear that the purpose of the tax relief is to aid the conservation effort . . ."Johnson v. Board of Tax Review, 160 Conn. 71, 73
(1970).
It is further evident from a review of the legislative history of the farmland statutes that our legislators were particularly concerned with "conservation of our natural resources in the face of our exploding population growth" and our move toward greater industrialization.Connecticut Joint Standing CommitteeHearings, State Development and Agriculture, 1963 Sess., p. 17. In a speech before the Joint Standing Committee, Mr. McCormick, who drafted Substitute Bill No. 253 (now Connecticut General Statutes §§ 12-107a
and 12-107c), stated that this legislation resulted from the need to find a solution to "suburban sprawl" and the environmental impact it had on our state. Id. at 33. He predicted that the population growth in the suburbs would eventually lead to the subdivision of greater amounts of farmland, increased pollution, and "a gradual loss of our state's agriculture and economy . . ." Id. at 31-32. Substitute Bill 253 was offered and eventually passed, as an attempt to save CT Page 10115-G our farmland and open spaces from extinction by subdivision.
In support of Substitute Bill 253, Senator Carlson noted that
 [t]his bill will provide for preservation of open space, will provide a means for preserving farm land a great need in the State of Connecticut . . . It will permit [farmers] to file with the assessor in order to obtain the benefits of assessment on the basis of use through which they can preserve their land and keep open spaces for their benefit and the future benefit of all.
10 H.R. Proc., 7, 1963 Sess., pp. 2348-49. Substitute Bill 253 received the unanimous support of the Senate. Id. at 2352. It then passed in the House three days later. 10 H.R. Proc. 11, 1063 Sess., p. 4249.
It is also apparent that the legislators were concerned with speculators attempting to gain favorable tax treatment, only to divest themselves of the farm land in a few years. Connecticut Joint Standing CommitteeHearings, State Development and Agriculture, 1963 Sess., pp. 34, 42, 44-45. To alleviate this problem, Substitute Bill 253 provided municipal assessors with a set of guideline factors to consider when determining if a particular parcel of land should be classified as farmland (now Connecticut General Statutes § 12-107c), such as gross income derived from the land and the portion of the land actually devoted to farming. The inclusion of these guidelines ensures that only true farmers will be able to benefit from the decreased tax assessment.[1]
When this court considers the language of C.G.S. § 12-504h, the stated purpose of the favorable tax treatment for farmland contained in C.G.S. § 12-107a, the legislative history behind the enactment of Public Act 490 and the factual context within which the legislators were operating, to allow the plaintiff to maintain the status of his land as farmland, while at the same time hold it ready for immediate sale and construction, would frustrate the intent of the legislature CT Page 10115-H that our state's farmland be preserved and protected from endless subdivision.
While the plaintiff relies on several cases to support the proposition that this court must look to the actual use of the property and not the intended use of the property, for purposes of determining its tax status, these cases are factually distinguishable from the instant case. See Arnold College v. Milford, 144 Conn. 206
(1957), Gillette v. Hartford, 31 Conn. 351 (1863). The plaintiff does not cite any case in which the party seeking farmland status filed an approved subdivision plan for land previously classified as farmland. This case does not involve the mere intent to change the use of land in the future. Here, the plaintiff has subdivided his land and holds it out for immediate sale and construction, and as such has changed its present actual use.
In this case, while the plaintiff continues to grow corn on the remaining lots, the land is subdivided and openly marketed for sale. He has sold at least five individual lots with houses and has commenced construction upon at least three others. According to the testimony of the assessor of the Town of Sterling, the building activity on these lots has taken place over the course of three years. (Trial Transcript, p. 26.) The plaintiff presumably would sell the remaining lots if the real estate market were to improve. It is likely that the plaintiff will continue to grow corn on the remaining lots only until they are sold and or constructed upon.
Based upon the foregoing, this court affirms the decision of the Board of Tax Review of the Town of Sterling rejecting the plaintiff's application for classification of the disputed portion of his land as farmland. The Town, acting by its assessor and Board of Tax Review, properly continued to classify the land as individual subdivided lots in the three tax years succeeding the subdivision, and therefore the plaintiff has not been aggrieved by its decision. Thus, the plaintiff's appeals from the decisions of the assessor and the Board of Tax Review are dismissed. CT Page 10115-I